Robin CHRISTIE, Plaintiff–Appellant,

v.

SAN MIGUEL COUNTY SCHOOL DISTRICT R–2(J), Defendant–Appellee.

No. 85CA1175.

Colorado Court of Appeals, Div. I.

March 3, 1988.

Rehearing Denied April 14, 1988.

Certiorari Denied Aug. 22, 1988.

Hobbs, Bethke & Associates, Larry F. Hobbs, Vonda G. Hall, Denver, for plaintiff-appellant.

Law Offices of Reese Miller, P.C., Kenneth A. DeLay, Denver, for defendant-appellee.

METZGER, Judge.

In this action arising from the termination of her employment as a full-time nontenured teacher, plaintiff, Robin Christie, appeals the directed verdict entered in favor of the defendant, San Miguel County School District R–2(J) (district), at the close of plaintiff's case-in-chief. Plaintiff contends that the trial court erred: (1) in find-

ing that the district had not violated the Teacher Employment, Dismissal, and Tenure Act of 1967 (the Tenure Act), § 22–63–101, et seq., C.R.S., when it transferred plaintiff from a full-time position as a music teacher to a position as a "permanent substitute" teacher; (2) in concluding that the district had not breached plaintiff's employment contract; and (3) in ruling that a *prima facie* case of constructive discharge and denial of due process had not been presented. We affirm.

Plaintiff, a certified teacher with an endorsement in music, was first employed by the district as a substitute music teacher in the 1977–78 school year. She was offered and accepted a contract to teach music to kindergarten through twelfth grade students for the 1978–79 school year. She was subsequently re-employed for the 1979–80 school year, again as a music teacher.

In the summer of 1979, discussions were held by the school board members regarding concerns about plaintiff's performance and her continued assignment as a music teacher. In early September, the school board decided to reassign plaintiff as a "permanent substitute" teacher, at the same salary, and to hire a new music teacher. Plaintiff was informed of this decision shortly thereafter, and she served as a substitute music teacher until October, when a replacement arrived and assumed the role of full-time music teacher.

Thereafter, plaintiff was required to report daily for her assignment, which was given to her in a written directive stating the class or classes she was to teach that day. With few exceptions, plaintiff was assigned to teach a life skills vocational education class and to teach physical education in conjunction with another teacher. Acting upon the advice of her attorney, plaintiff refused each assignment, stating that she was not qualified to teach those subjects.

This situation persisted until January 1980, when, through her attorney, she tendered her resignation. Plaintiff then filed this action against the district, seeking recovery based upon three theories of relief: (1) constructive discharge; (2) breach of contract; and (3) violation of the Tenure Act. At the close of her case-in-chief, the district requested and was granted a directed verdict on all issues. This appeal followed.

## I.

Plaintiff first argues that the trial court erred in finding that the district had not violated the Tenure Act when it transferred her from the position of music teacher to a "permanent substitute" position with almost all assignments in vocational education and physical education. We disagree.

In reviewing a trial court's decision to grant a motion for a directed verdict, we must consider the evidence adduced, and all inferences reasonably deducible therefrom, in the light most favorable to the party against whom the motion was directed. *Gossard v. Watson,* 122 Colo. 271, 221 P.2d 353 (1950). The record does not support plaintiff's contention.

The power of a school board to control the assignment and transfer of teachers within its district is limited only by the express terms of the Tenure Act. *Wells v. Del Norte School District C–7,* 753 P.2d 770 (Colo.App.1987); *see also Draper v. School District No. 1,* 175 Colo. 216, 486 P.2d 1048 (1971). Section 22–63–114(1), C.R.S., of the Tenure Act provides that:

"A teacher may be transferred ... from one school, *position,* or grade level to another within the school district, *if such transfer does not result in the assignment of a teacher to a position of employment for which he is not qualified by virtue of academic preparation and certification,* and if, during the then current school year, the amount of salary is not reduced...." (emphasis added)

In our view, the legislative intent of this statutory provision was to make the transfer of teachers between positions a discretionary determination by the school board if the positions are within the teacher's

preparation and certification. *Wells v. Del Norte School District C–7, supra.*

■ To show a violation of the Tenure Act, plaintiff here was required to demonstrate that she was unqualified for her new assignments by either certification or academic preparation, since her salary was not reduced. Plaintiff, who held a Type A certificate with an endorsement in music, contends that a Type C vocational certification, which she did not have, was required to teach the life skills class. Thus, she argues, she was unqualified. However, the record does not support this assertion.

The regulations in effect when plaintiff was assigned to teach the life skills program demonstrate that no special certification was required. A Type C vocational teaching certificate:

"[q]ualifies the holder to teach in the vocational field(s) indicated on the certificate. The certificate is not valid for teaching in general vocational areas for which the normal entry route is through the approved program leading to the Type A certificate and endorsement...."

1 *Code Colo.Reg.* 301–15, § 2260–R–2.03(1) (1979); *see also* § 22–60–104(1), C.R.S. The Type C certificate is designed for a person who has specialized vocational training, but who lacks the educational training normally required of teachers.

Historically, in this district, certified teachers with Type A licenses had been assigned to teach the life skills class. Moreover, plaintiff testified that she would have refused any duties assigned except the teaching of music classes, and the record shows that she did so. Consequently, her arguments concerning the legal requirements for teaching the life skills class are unconvincing.

Under these circumstances, the trial court correctly entered a directed verdict.

## II.

Plaintiff next asserts that the district breached her employment contract by reassigning her as a "permanent substitute" teacher, rather than as a music teacher. Again, taking all evidence and inferences in her favor, we do not agree.

■ It is fundamental contract law that the intent of the parties to a contract must be determined from the contract itself. If the terms of the contract are complete, clear, and unambiguous, no extraneous evidence may be considered in ascertaining the intent of the contracting parties. The effect of the contract is determined as a matter of law. *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.,* 195 Colo. 253, 577 P.2d 748 (1978).

■ Plaintiff's employment contract did not specify that she was employed solely to teach music. It provided that she was hired "to teach in the schools of said district R–2J for the 1978–79 school year, at a salary ... payable in 12 equal payments." The contract further provided that plaintiff would "follow the leadership direction, and assignments given ... by the administration" of the school. Plaintiff's subjective understanding that she was hired to teach only music cannot change or modify the written contract.

Thus, the trial court did not err in directing a verdict for the district on plaintiff's breach of contract claim.

## III.

We also reject plaintiff's contention that the trial court erred in finding that she was not constructively discharged by the district when it transferred her to the position of "permanent substitute" teacher.

■ To prove a constructive discharge, a plaintiff must present sufficient evidence establishing deliberate action on the part of an employer which makes or allows an employee's working conditions to become so difficult or intolerable that the employee has no option but to resign. *Wilson v. Board of County Commissioners,* 703 P.2d 1257 (Colo.1985).

■ The determination whether the actions of an employer amount to a constructive discharge depends upon whether a reasonable person under the same or similar circumstances would view the new working conditions as intolerable. *Wilson v. Board of County Commissioners, su-*

*pra.* The test requires an objective evaluation of the acts of the employer and their effects on the employee, and is not dependent upon the employee's subjective view. *Wilson v. Board of County Commissioners, supra; Colorado Civil Rights Commission v. Colorado,* 30 Colo.App. 10, 488 P.2d 83 (1971).

Plaintiff argues that she met her burden by showing that: (1) she was asked to resign; (2) the district had a motive to force her to resign, *i.e.,* it did not have sufficient funds to engage a "full-time" substitute; (3) the transfer was in essence a demotion; and (4) the transfer involved a significant change in duties. However, even viewing the evidence and inferences therefrom concerning these matters in plaintiff's favor, we conclude that she failed to establish a *prima facie* case.

■ A request for a resignation will not support a claim of constructive discharge unless accompanied by harassment, coercion, or other employer conduct which makes the working conditions intolerable. *Knee v. School District No. 139,* 106 Idaho 152, 676 P.2d 727 (App.1984). Even though the employer may have a motive to force an employee's resignation, the employee's knowledge that his job is protected by statute and contract militates against finding a constructive discharge. *Knee v. School District No. 139, supra.*

■ Such was the case here. Although the record shows that plaintiff may have been asked to resign, it contains no evidence to show that she was harassed or coerced in any way by her employer. Plaintiff did describe her relationships with her fellow employees, the principal, and the superintendent as uncomfortable, but she did not testify that the conditions were intolerable. She further testified that she knew that only the school board could terminate her employment.

■ In addition, the change in plaintiff's duties did not constitute a demotion; her transfer was simply a reassignment of duties, which the district was authorized to do. *See* § 22-63-114(1), C.R.S. And, the mere fact of a change in duties is insuffi-

cient to constitute a *prima facie* demonstration of constructive discharge. Moreover, the record shows that plaintiff consistently refused to perform her reassigned duties.

Thus, since we find no *prima facie* demonstration of constructive discharge, we need not address plaintiff's allegation that she was deprived of due process.

The judgment is affirmed.

PIERCE and CRISWELL, JJ., concur.