Yishai SINGER, Plaintiff,

v.

**DENVER SCHOOL DISTRICT NO. 1, in the City and County of Denver, and Edward Cordova, Defendants.**

Civil Action No. 95–K–2267.

United States District Court,
D. Colorado.

April 9, 1997.

Nathan Davidovich, Steven W. Moore, Denver, CO, for Plaintiff.

Michael H. Jackson, Patrick B. Mooney, Semple & Mooney, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Plaintiff Yishai Singer, an Hispanic man who became an orthodox Chassidic Jew, claims he was discriminated against by Defendants School District No. 1 in the City and County of Denver (the "School District") and Edward Cordova, principal of West High School because of his religion, race, color and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; and 42 U.S.C. § 1983.

Jurisdiction exists under 28 U.S.C. §§ 1331, 1337 and 1343.

Defendants move for partial summary judgment in favor of both Defendants on Singer's § 1981 claim, in favor of the School District on Singer's 1983 claim or in the alternative in favor of both Defendants on Singer's due process claim; in favor of Cordova on the Title VII; claim and in favor of both Defendants on all claims of Singer for constructive discharge.

## I. *Factual Background.*

Singer's birthname was Jesse Hernandez. He converted to Orthodox Judaism in 1989 and changed his name in the following year.

He was employed with the Denver Public Schools and served as a teacher at West High School from January 24, 1986 to June 3, 1994. At the time Singer began to work at the school, Defendant Edward Cordova was assistant principal. He became the principal in January 1991.

Cordova appraised Singer during the 1993–94 school year. According to Defendants, during the 1993 to 1994 school year, Cordova found certain deficiencies in Singer's teaching performance, including excessive use of handouts and seat work, lack of critical thinking skills and segregation of male and female students. Singer denies there were any deficiencies in his teaching performance and maintains Cordova's criticism of him was unwarranted and a pretext for discrimination.

Cordova testified, despite the deficiencies, he rated Singer satisfactory in all areas for the 1993–94 school year because rating him as unsatisfactory would have required him to place Singer on a Plan for Improvement which Cordova did not think he would be able to meet. Singer asserts he was rated as satisfactory because if he had been rated as unsatisfactory and placed on a Plan For Improvement, he would not be able to transfer and Cordova wanted to force him out of West High School. He maintains Cordova wanted to do this because Singer is a Chassidic Jew.

According to Cordova's deposition testimony, he thought it would be best for Singer to transfer to another building and recommended he sign a teacher initiated request to transfer from West High School. Cordova testified his recommendation had nothing to do with Singer's religion but rather with several areas of concern such as a poor attendance pattern.

Singer states Cordova threatened that if Singer did not voluntarily initiate a transfer, Cordova would initiate the transfer. Cordova acknowledged in deposition that if Singer had not initiated the transfer, Cordova would have done so.

Singer was a teacher with continuing service. As such he could only be lawfully dismissed from employment in the manner prescribed in Teacher Employment, Compensation and Dismissal Act, Colo.Rev.Stat. § 22–63–301 *et seq.* (1995).

On April 22, 1994, Singer submitted his request for transfer from West High School to another Denver Public High School for the 1994–95 school year to the School District's personnel office. Singer conceded Cordova told him he wanted him to leave West High School in good standing. At no time did Singer bid on any vacancies for positions in the School District for the following school year.

On June 3, 1994, Singer submitted a Resignation Request form to the School District. A letter accompanying the form stated Singer was involuntarily resigning his position

> because my working conditions at West High School have become so intolerable that I have no other alternative but to resign.
>
> I have been subjected to a hostile work environment for members of the Jewish religion and for Hispanics. I cannot tolerate any more anti-semitic or racist conduct from my immediate supervisor, Principal Ed Cordova.

(Defs.' Mot. Partial Summ. J., Ex. D.)

It is undisputed Singer did not file any grievance or affirmative action complaint while employed with the School District. Defendants assert Singer did not report any alleged harassment before 1993 to anyone in the School District, citing his deposition testimony to this effect.

In his affidavit, without referring to any particular year, Singer states he complained to administrator John Lydia, vice principal George Willett and human resources official, Susan Koskove. Lydia and Koscove deny receiving complaints about Cordova. Defendants point out the unsworn statements of Willett state that Cordova had informed him of Singer's allegations, not that he was aware that they had any validity.

Singer maintains Cordova continually made anti-Semitic remarks about his Chassidic clothing and appearance, criticizing his kippah/yarmulke (skull cap), long black coat, side locks of hair and long beard. According

to Singer, Cordova made anti-Semitic remarks to him regarding the eating of pork, and intentionally interfered with his Sabbath observance. Singer further maintains Cordova used profane language when disciplining him, which language Cordova knew to offend his religious sensibilities. He also asserts, despite his request, he was not provided with a kosher meal at a luncheon he was required to attend. He maintains Cordova pressured him to violate his religious beliefs by ordering him to attend graduation ceremonies where women would be singing. Defendants deny all these allegations.

In addition, Singer states when he was absent from work due to a religious holiday, Dr. Gaye Leo, an administrator told students he was absent due to personal problems. This too, Defendants deny.

According to Singer, Cordova criticized him for copying too much material concerning the Holocaust for handouts to the students. Defendants admit Cordova criticized Singer for copying too much material on the film "Schindler's List" as Singer copied four virtually identical articles. They deny the subject matter was the cause of concern.

Singer maintains Cordova told him he (Cordova) should take a job teaching Catholicism at a Jewish school as Singer was teaching Judaism at West High School. Cordova denies this.

Singer asserts he suffered emotional and physical problems as a result of Defendants' discriminatory conduct. Defendants deny any discriminatory conduct.

Cordova testified Singer never accused him of religious harassment and seemed content to leave West High School. Singer states he frequently accused Cordova of religious harassment, was not content to leave West High School, and only did so as a result of intolerable working conditions.

At an unemployment compensation hearing in January, 1995, in response to a question as to why he quit his job, Singer mentioned harassment at West High School, constant confrontations with Cordova, and that he did not feel conditions would be better at another school. He said he felt he was going to be dismissed and decided to resign early as by doing so he could receive a lump sum payment, funds of which his family was in need. In his affidavit in response to the summary judgment motion, Singer states he was confused, intimidated and nervous at the hearing and did not mean to say the reason for his resignation was to obtain a lump sum of money.

He asserts in his affidavit that he did not quit his job for financial reasons. He states he could not afford to lose his job in 1994 as he and his wife were attempting to adopt a young boy. In addition, one of his daughters was suffering from a serious illness and he knew he would eventually lose his health insurance if he resigned.

Defendants maintain Singer withdrew $ 16,197.34 from the School District Pension and Benefits Account in July, 1994 and attach documentation in this regard. Singer says he recalls the amount being approximately $ 11,000.00.

## II. Standard for Motion for Summary Judgment.

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. . . .

While the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the non-movant's claim but need only point to an absence of evidence to support the non-movant's claim. If the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant.

*Kaul v. Stephan,* 83 F.3d 1208, 1212 (10th Cir.1996) (quoting *Wolf v. Prudential Ins. Co.,* 50 F.3d 793, 796 (10th Cir.1995)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317,

325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

### III. *Merits.*

Defendants move for partial summary judgment in favor of both Defendants on Singer's § 1981 claim; in favor of the School District on Singer's 1983 claim or, in the alternative, in favor of both Defendants on Singer's due process claim; in favor of Cordova on the Title VII claim and in favor of both Defendants on all claims of Singer for constructive discharge.

### A. *Liability of the School District under § 1983 and § 1981.*

Defendants seek judgment on Singer's claim alleging violation of 42 U.S.C. § 1981 against the School District and Cordova on the grounds that the claim is barred because the action at law provided under 42 U.S.C. § 1983 affords the exclusive federal damages remedy for violation of rights guaranteed by § 1981 when the claim is pressed against a state actor.[1] *See Jett v. Dallas Independent School District*, 491 U.S. 701, 735, 109 S.Ct. 2702, 2722, 105 L.Ed.2d 598 (1989).

Defendants appear to misapprehend *Jett* and its progeny. The Court in *Jett* concluded "the express cause of action for damages contained in § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981." *Id.* at 733, 109 S.Ct. at 2722. It did not conclude that a plaintiff cannot sue a municipality under both §§ 1981 and 1983, but rather that a claim for damages against a state actor for violation of rights contained in § 1981 must be redressed pursuant to the remedial provisions of § 1983. *See, e.g., Randle v. City of Aurora*, 69 F.3d 441, 446 (10th Cir.1995) (addressing whether the City was liable under § 1983 and § 1981 for the alleged discriminatory acts of its officials).

▪ In *Randle*, the Tenth Circuit noted " 'to prevail on [a] claim for damages against [a governmental entity], petitioner must show that the violation of his [or her] "right to make contracts" provided by § 1981 was caused by a custom or policy within the meaning of *Monell [v. New York City Dept. of Social Services]*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).' " 69 F.3d at 446 n. 6 (quoting *Jett*, 491 U.S. at 735–36, 109 S.Ct. at 2723). Thus, "all references to § 1983 liability with regard to the issues of custom and policy also address the question of whether the City can be held liable under § 1981." *Id.* As in *Randle*, the following discussion relating to the School District's custom or policy in the context of § 1983 liability is applicable to whether it can be held liable under § 1981.

Defendants argue Singer may not recover against the School District under § 1983 because he has failed to show that the District maintained a custom of discriminatory personnel practices. Singer responds a reasonable inference can be drawn that there was a widespread practice or custom to discriminate because officials of the School District observed Cordova's anti-Semitic conduct and failed to take prompt effective remedial action to stop such discrimination and harassment.

▪ In *Randle*, the court held the plaintiff's "failure to allege the existence of similar discrimination as to others seriously undermines her claim that the City maintained a custom of discriminatory personnel practices." *Randle*, 69 F.3d at 447. A custom requires the illegal practice to be "wide-

---

1. Section 1981 provides in pertinent part:

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment. pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
   42 U.S.C. § 1981(a).

   Section 1983 provides in relevant part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.
   42 U.S.C. § 1983.

spread," i.e involving a "series of decisions." *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988); *Melton v. City of Oklahoma City,* 879 F.2d 706, 725 n. 26 (10th Cir.1989) (distinguishing the facts from *Praprotnik* on the grounds that Melton had offered evidence that the City had acted similarly against another person and, was therefore potentially able to show the existence of a custom), *modified on other grounds,* 928 F.2d 920, 922 (10th Cir.) (en banc), *cert. denied,* 502 U.S. 906, 112 S.Ct. 296, 297, 116 L.Ed.2d 241 (1991).

Here, based on the incidents of discrimination alleged by Singer (which were all directed against him), Singer has failed to establish a genuine dispute of material fact about whether the School District had a custom of discriminatory employment practices. *See Randle,* 69 F.3d at 447.

■ Defendants further argue Cordova was not a "final policymaker" and therefore the School District cannot be held liable for his actions under § 1983. If an official who possesses final policymaking authority in a certain area makes a decision, that decision constitutes municipal policy for § 1983 purposes and will be understood as an act which the municipality officially sanctioned. *Id.* at 447.

■ The question of whether an official has "final policymaking authority" is one of state law. *Praprotnik,* 485 U.S. at 123, 108 S.Ct. at 924. In the case of a school district, a termination of a teacher lies within the responsibility of the board of education. Colo.Rev.Stat. § 22–63–301 *et seq.; Snyder v. Jefferson County Sch. Dist.,* 842 P.2d 624, 631 (Colo.1992).

Defendants assert Singer's § 1983 claim against the School District should be dismissed as he has not shown that any alleged discriminatory practices were undertaken by the board of education as the final policymaker for the School District. Singer maintains Cordova had final policymaking authority regarding the terms and conditions of employment which resulted in his constructive discharge from employment. He further asserts Cordova was vested with the authority to initiate a forced transfer of an employee such as himself.

■ Where a board of education retains authority to review a decision, a delegation of final authority does not occur. *Jantz v. Muci,* 976 F.2d 623, 631 (10th Cir.1992). Here, the board of education is empowered under Colorado Law to be the final policymaker for the purposes of hiring and firing employees. Accordingly, the board, rather than Cordova held final policymaking authority with regard to the termination of his employment.

■ Nor has Singer established Cordova was the final policymaker with regard to teacher transfers. Article 13–3–1 of the Agreement between the Denver Classroom Teachers Association and the School District (January 1, 1991 to August 31, 1991) required approval of the Superintendent or designee before a change in assignment could be granted. Singer's transfer request was signed by Lino Gonzales, administrative director and apparently the Superintendent's designee for the purposes of Article 13–3–1.

Applying the appropriate legal standard for determining whether an official is a final policymaker to the circumstances of this case, Singer has not shown a genuine issue of material fact exists regarding Cordova's final policymaking authority concerning the termination or transfer of employees.

For the aforesaid reasons, I conclude summary judgment should enter against Singer on the § 1981 and § 1983 claims against the School District.

*B. Liability of Cordova under § 1981.*

I have concluded the School District is not liable to Singer under § 1981. I consider Defendants' additional argument concerning the § 1981 claim since it remains of relevance to Singer's § 1981 claim against Cordova.

Defendants argue § 1981 does not apply to religious discrimination and the claim should be dismissed insofar as it is based on such discrimination. *See Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 n. 3 (10th Cir.1993); *Manzanares v. Safeway Stores, Inc.,* 593 F.2d 968, 971 (10th Cir.1979) (holding § 1981 is directed to racial discrimination (although "not necessarily limited to the

technical or restrictive meaning of race'") but "does not apply to sex or religious discrimination").

Singer cites the holding in *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 618, 107 S.Ct. 2019, 2021, 95 L.Ed.2d 594 (1987) that Jews are a distinct race for civil rights purposes in support of his argument that discrimination against him on the basis of his being Jewish is actionable under § 1981. *See also St. Francis College v. Al–Khazraji*, 481 U.S. 604, 612, 107 S.Ct. 2022, 2027, 95 L.Ed.2d 582 (1987) (noting Jews and Arabs were among the peoples considered to be distinct races and within the protection of § 1981 at the time it was passed).

▉ Since Singer is claiming he was discriminated against as a Jew, a distinct racial group for the purposes of § 1981, Defendants are not entitled to judgment on the basis that he is claiming religious discrimination. Accordingly, the motion for partial summary judgment is denied insofar as it seeks dismissal of the § 1981 claim on this ground.

## C. *Liability of Cordova under § 1983.*

### 1. *Violation of Due Process—Deprivation of Property Interest.*

I have concluded the School District is not liable under § 1983 on the grounds that Singer has failed to show a discriminatory custom or policy. I consider Defendants' alternative arguments as they bear on Singer's § 1983 claim against Cordova.

Defendants seek dismissal of Singer's § 1983 claim insofar as it is based on the assertion that, as a tenured teacher, he was deprived of his property interest in continued employment with the School District by Defendants, acting under color of state law, without due process of law.

It is undisputed that Singer had a property interest in continued employment, having been employed by the School District since 1986. Defendants assert he voluntarily resigned his employment in June 1994. They point out Singer had the right to demand the School District initiate procedures set forth in the Teacher Employment, Compensation and Dismissal Act, Colo.Rev.Stat. § 22–63–301, but did not exercise that right. In so doing, Defendants argue, Singer voluntarily relinquished his property interest and was

not deprived of such interest without due process.

Singer maintains he did not resign voluntarily but was constructively discharged, citing his letter dated May 24, 1994 addressed to Mrs. Susan Koskove of Denver Public Schools.

The Tenth Circuit has held that where an employee voluntarily resigned her employment of her own free will, even though doing so due to actions of defendants, she voluntarily relinquished her property interest and was not deprived of such interest without due process. *Parker v. Board of Regents of Tulsa Jr. College*, 981 F.2d 1159, 1162 (10th Cir.1992) (citing *Stone v. University of Md. Medical Sys. Corp.*, 855 F.2d 167, 173 (4th Cir.1988)). If, however, the resignation was "so involuntary it amounted to a constructive discharge, defendants did deprive her of her property interest without due process." *Id.*

▉ "A resignation will be involuntary and coerced when the totality of the circumstances indicate the employee did not have the opportunity to make a free choice." *Id.* The factors to be considered are " '(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether he was permitted to select the effective date of resignation.' " *Id.* (quoting *Stone*, 855 F.2d at 174.) *See also Lenz v. Dewey*, 64 F.3d 547, 551–52 (10th Cir.1995) (citing these factors as relevant in assessing the voluntariness of an employee's resignation).

▉ Here, Singer has not produced evidence which shows that his resignation was so involuntary that it amounted to a constructive discharge. There is no violation of due process as Singer chose to end his employment without a hearing and not to avail himself of the available due process procedures. *See Parker*, 981 F.2d at 1163.

Even if one accepts as true his allegations concerning Cordova and the hostile working environment at West High School, Singer was given an alternative to resignation, namely transfer to another high school.

Singer was aware of this option and made application for transfer on April 22, 1994. He did not, however, bid on any vacancies for positions in the School District for the following year.

Because he has not shown that he had no real choice but to resign, Singer has not established a constructive discharge by which Defendants deprived him of his property interest without due process. Accordingly, Singer's § 1983 claim must fail insofar it is based on such deprivation.

### 2. *Violation of Due Process—Deprivation of Liberty Interest in Reputation as it affected Property Interest in Continued Employment.*

Defendants also seek judgment on Singer's § 1983 claim insofar as it is based on the assertion that he was deprived of a liberty interest in his good name and reputation as it affected his constitutionally protected property interest in continued employment with the School District.

■ In *Workman v. Jordan,* the Tenth Circuit recognized a plaintiff has "a liberty interest in his good name and reputation as it affects his protected property interest in continued employment." 32 F.3d 475, 480 (10th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1357, 131 L.Ed.2d 215 (1995). A plaintiff must show how the Defendants infringed upon this liberty interest. *Id.* at 480–81. To be actionable, the statements must "impugn the good name, reputation, honor, or integrity of the employee," *id.* at 481, "be false," *id.,* "occur in the course of terminating the employee or must foreclose other employment opportunities," *id.,* and "be published," *id.*

Defendants assert Singer cannot meet any of these conjunctive elements because he cannot point to any public statement implicating his liberty interest in employment. Singer maintains during the events which led to his constructive discharge, Cordova orally told (and thus published to) a variety of Singer's students and co-workers to spy on him and that Cordova was "out to get" Singer.

The statements Singer here attributes to Cordova are vague. A conclusion that they amounted to a publicizing of his shortcomings would be speculative. Similarly, not knowing precisely what was said, it is difficult to assess the truth or falsity of such statements. What is clear, however, is that Singer has not shown such statements occurred in the course of terminating him or foreclosed other employment opportunities.

■ Since Singer has not established he was constructively discharged, there is no showing that any of Cordova's alleged statements occurred in the course of his termination, nor that they foreclosed any employment opportunity. Accordingly, summary judgment is warranted on the § 1983 claim insofar as it is based on a deprivation of a liberty interest without due process of law.

### D. Title *VII Claim.*

Defendants assert Singer's claim alleging violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, against Cordova in his individual capacity must be dismissed as Title VII does not provide for personal liability of employees. *See Ball v. Renner,* 54 F.3d 664, 666–68 (10th Cir.1995); *Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993).

Singer responds he is not suing Cordova under Title VII. Accordingly, this aspect of Defendants' motion is moot.

### E. *Constructive Discharge.*

Defendants seek judgment in their favor on Singer's claim of constructive discharge. They assert Singer quit his employment with the School District although he had continuing service (previously termed tenure) and had the opportunity to transfer to another school.

As a teacher with continuing service, state law required Singer's employment could be terminated only after the School District filed statutory charges for dismissal and proved them before a hearing officer. Defendants assert Singer testified in deposition that he quit his job for financial reasons. They deny any discrimination, harassment, or retaliation. For these reasons, Defendants assert, Singer's claim for constructive discharge must fail as a matter of law.

Although Defendants do not specify, in view of the cases cited, they apparently here

refer to the Title VII cause of action for employment discrimination and retaliation insofar as it rests on the claim that Singer was constructively discharged.

I have above discussed the issue of constructive discharge in relation to the test applied in the Tenth Circuit as to whether a resignation was so involuntary as to deprive Singer of his property interest without due process. *See Parker v. Board of the Regents of Tulsa Jr. College,* 981 F.2d 1159, 1162 (10th Cir.1992).

In the context of a Title VII employment discrimination claim, the Tenth Circuit has held: "A finding of constructive discharge depends upon whether a reasonable [person] would view the working conditions as intolerable, not the subjective view of the employee-claimant." *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 343 (10th Cir.1986) (citation omitted). Thus the issue is whether a reasonable person in the employee's position would feel compelled to resign. *Id.* at 344.

██ Put another way, "[t]he question on which constructive discharge cases turn is simply whether the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *James v. Sears, Roebuck & Co., Inc.,* 21 F.3d 989, 992 (10th Cir.1994) (further quotations omitted). Since each case is to be reviewed on its merits, the issue is whether Singer has offered evidence that his continued employment would have been objectively intolerable.

██ Defendants point out that the facts that Singer was a teacher with continuing service who could only be terminated by the School Board and had the opportunity to transfer to another school require a finding that his working conditions were not intolerable as a matter of law. In this regard, they cite *Christie v. San Miguel County Sch. Dist.* which held "[a] request for a resignation will not support a claim of constructive discharge unless accompanied by harassment, coercion, or other employer conduct which makes the working conditions intolerable." 759 P.2d 779, 783 (Colo.App.1988). "Even though the employer may have a motive to force an employee's resignation, the employee's knowledge that his job is protected by stat-

ute and contract militates against finding a constructive discharge." *Id.*

Defendants also cite the Tenth Circuit's holding in *Buchanan v. Sherrill* that "regardless of the evidence of sexual harassment or gender-based discrimination, it is undisputed that defendant had arranged to transfer plaintiff to another restaurant—thus ending the alleged harassment or discrimination—but she quit her job anyway.... There was no evidence ... from which to infer that the harassment would have continued at plaintiff's new place of employment." 51 F.3d 227, 229 (10th Cir.1995).

Singer responds that *Christie* is distinguishable in that unlike in this case, there was no evidence that the plaintiff had been harassed or coerced in any way by her employer. He also distinguishes *Buchanan* on the grounds that there, unlike here, the employer took prompt remedial action regarding the plaintiff's complaints of sexual harassment by transferring her to another restaurant. Here, however, Singer asserts the threat to transfer him was not a remedial act but in itself an act of discrimination.

Nevertheless, as Defendants correctly point out, Singer has not cited any authority for his argument that a transfer constituted constructive discharge. Defendants cite *McKethan v. Texas Farm Bureau,* 996 F.2d 734, 741 (5th Cir.1993) where a plaintiff quit after he had been publicly embarrassed by his supervisor. The court of appeals affirmed the district court's granting of summary judgment on the plaintiff's age discrimination claim on the grounds that he had failed to establish constructive discharge. In doing so, it noted none of the usual factors in a constructive discharge case were present—the plaintiff had not been demoted, was not asked to perform duties inconsistent with or more onerous than others in his position, did not have his compensation reduced and had not shown the remark diminished his reputation. The court found a reasonable jury could not find constructive discharge based on the embarrassment caused by the incident, the failure to initiate a proper apology and otherwise dissuade him from retiring and his inferences that this reflected his em-

ployer's desire to replace him with a younger person.

Defendants also cite *Cherchi v. Mobil Oil Corp.*, 693 F.Supp. 156, *aff'd*, 865 F.2d 249 (3rd Cir.1988) where the court found the plaintiff's unwillingness to relocate from New Jersey to Maryland did not constitute constructive discharge. The district court remarked:

> "Every job has its frustrations, challenges and disappointments; these inhere in the nature of the work. An employee is protected from ... the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers [such that would compel a reasonable person to resign]. He is not, however, guaranteed a working environment free of stress. The employment discrimination laws require as an absolute precondition to suit that some adverse employment action have occurred. They cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting."

*Id.* at 162 (quoting *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985)).

As additional authority, Defendants cite the unpublished decision of Chief Judge Matsch in *Ashour v. The Bailey Co.*, Civil Action No. 95–M–138 (D. Colo. June 3, 1996). The facts of that case are analogous to those here. Ashour, a man observant of the Muslim religion, was given the option either to resign or to accept a demotion from Unit Supervisor to Unit Manager (which would not result in a reduction in pay) and a transfer to a store ten miles further from his mosque ("Arapahoe Store"). He resigned.

Citing *Derr*, Judge Matsch found Ashour had not shown his employer had committed unlawful discriminatory acts which made his working conditions objectively intolerable. Because Ashour had quit without working at the Arapahoe store, and had made no inquiry as to what accommodations could be made for him, there was nothing more than speculation in his assertion that the transfer would have been intolerable.

Moreover, Judge Matsch determined Ashour's reliance on the fact that the transfer to the Arapahoe Store would have added approximately ten miles to his commute to his mosque and school, was insufficient to establish intolerable work conditions. He aptly cited the following statement in *Darnell v. Campbell County Fiscal Court:* "Of course, transfer over a great distance can amount to a constructive discharge.... The court holds as a matter of law that the fact that a short 20 minute drive was required did not convert the transfer to a 'constructive discharge.' The mere subjective preferences of the plaintiff ... are insufficient to turn a transfer of location into a constructive discharge." 731 F.Supp. 1309, 1313 (E.D.Ky. 1990), *aff'd*, 924 F.2d 1057 (6th Cir.1991).

Singer has not shown that the option of continued employment at another high school within the School District would have been objectively intolerable. The only objection Singer apparently has to these other high schools is their geographic location which, he maintains, would have interfered with his Sabbath observance. His subjective preference is insufficient to turn a potential transfer into a constructive discharge.

Singer argues, since no specific transfers were offered, Defendants cannot maintain he refused a transfer. This argument is somewhat circumlocutious as, although Singer submitted a request for transfer in April 1994, he did not bid on any vacancies for positions in the district for the following school year.

Singer has not produced evidence on which a reasonable jury could conclude in his favor that this was a situation of resign or be terminated. He had an expectation of continued employment as a teacher with continuing service. Moreover, he had considered transferring from West High School before he quit but did not determine if any vacancies were available. He quit without considering alternatives. He has not shown that the circumstances were such that a reasonable person in his position would have felt compelled to resign.

Nor has Singer presented sufficient evidence to support a jury's determination that he was constructively discharged because he was "treated as incapable or ineducable." *See Acrey v. American Sheep Indus. Ass'n,* 981 F.2d 1569, 1574 (10th Cir.1992).

Accordingly, I conclude Singer's Title VII claim for employment discrimination must fail insofar as it is based on a claim of constructive discharge.

### F. *Punitive Damages.*

Finally, Defendants argue Singer is not entitled to punitive damages. Singer concedes exemplary damages are not recoverable from the School District as a governmental entity. However, he maintains he is entitled to such damages against Cordova under either § 1981 or 1983.

I have dismissed Singer's claim against the School District under § 1981 and § 1983. I have also dismissed the § 1983 claim against Cordova insofar as it is based on a deprivation of property interest in continued employment or liberty interest in protecting his reputation as it affected that property interest.

The § 1983 claim also rests on allegations of a deprivation of constitutional rights of freedom of religion and freedom of speech as guaranteed by the 1st and 14th Amendments of the United States Constitution. (Compl.¶¶ 7, 24, 41.) Defendants' motion for summary judgment did not address these aspects of the § 1983 claim. Thus, it would be premature for me to consider if Singer is entitled to punitive damages against Cordova related to these alleged constitutional violations. Similarly, it is premature to consider the issue of such damages in relation to the remaining § 1981 claim against Cordova.

### IV. *Conclusion.*

For the aforesaid reasons, I order the following:

Defendants' Motion for Partial Summary Judgment is GRANTED insofar as it seeks judgment on Plaintiff's claims (1) against the School District under 42 U.S.C. § 1981 and 42 U.S.C. § 1983; (2) against both Defendants under § 1983 insofar as it is based on alleged constitutional deprivations of property interest in continued employment and liberty interest in reputation as it affected such property interest; (3) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* insofar as it is based on a claim of constructive discharge;

Defendants' Motion for Partial Summary Judgment is DENIED insofar as it seeks judgment on Plaintiff's claim against Cordova under 42 U.S.C. § 1981;

Defendants' Motion for Partial Summary Judgment is GRANTED insofar as it seeks judgment on the issue of punitive damages against the School District;

Defendants' Motion for Partial Summary Judgment is DENIED without prejudice insofar as it seeks judgment on the issue of punitive damages against Cordova under 42 U.S.C. § 1981 and under 42 U.S.C. § 1983 related to those alleged constitutional violations not addressed in Defendants' Motion for Partial Summary Judgment;

Defendants' Motion for Partial Summary Judgment is DENIED AS MOOT insofar as it seeks judgment on Plaintiff's claim against Cordova in his individual capacity under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.