981 F.2d 1159
 79 Ed. Law Rep. 782
 Barbara L. PARKER, Plaintiff-Appellee,
v.
BOARD OF REGENTS OF the TULSA JUNIOR COLLEGE, a Body
Corporate; Dorothy Zumwalt and Ron Blue, individually and
in their official capacities as members of the Board of
Regents of Tulsa Junior College; Martin Garber and Edwynne
Krumme, in their official capacities as members of the Board
of Regents of Tulsa Junior College; Ron Looney and Thad
Taylor, Jr., individually and in their official capacities
as members of the Board of Regents of Tulsa Junior College;
Alfred M. Phillips, individually, Defendants,
and
Dean Vantrease, individually and in his official capacity as
President of Tulsa Junior College; Brenda Martin,
individually; David Benton,
individually, Defendants-Appellants.
 No. 92-5061.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 17, 1992.
 
 Laura Emily Frossard, Tulsa, Okl., for plaintiff-appellee.
 Michael J. Gibbens, Steven M. Kobos, Graydon Dean Luthey, Jr., and Randall J. Snapp, of Jones, Givens, Gotcher & Bogan, P.C., Tulsa, Okl., for defendants-appellants.
 Before MOORE and TACHA, Circuit Judges, and SAFFELS,* Senior District Judge.
 TACHA, Circuit Judge.
 
 
 1
 Plaintiff-appellee Barbara L. Parker brought this suit under 42 U.S.C. § 1983 against the Board of Regents of Tulsa Junior College (TJC), individual members of the Board of Regents, and administrators of TJC, including Dean VanTrease, David Benton, and Brenda Martin, alleging violation of her property interest in employment without due process. She maintained she was constructively discharged without a pretermination hearing, when she resigned after being given a choice to resign or face termination proceedings. Plaintiff further alleged that her resignation was involuntary, because it was obtained by duress.[1] Defendants-appellants VanTrease, Benton, and Martin (defendants) filed a motion for summary judgment alleging that they were entitled to qualified immunity. They asserted that there was no clearly established law giving plaintiff the right to a pretermination hearing before she chose to resign rather than face termination proceedings. The district court denied summary judgment, and defendants appealed. Because we conclude the district court erred in denying summary judgment, we reverse.[2]
 
 
 2
 Plaintiff had been the chairperson of the Liberal Arts Division of TJC Southeast Campus since December 1983. The position was tenured, and she could be terminated only for "just cause."
 
 
 3
 One of her job duties was to hire part-time instructors. She hired her daughter Mary Parker to teach as a part-time instructor. At the time she was first hired, 1985, Mary Parker had completed only two years of college.
 
 
 4
 On January 20, 1989, defendant Benton, at that time Dean of Instruction of the Southeast Campus of TJC, asked plaintiff to provide all applications for part-time instructors to the central office. Mary Parker's application was not included with the applications submitted. Defendant Benton specifically requested her application. When plaintiff could not find Mary Parker's application, plaintiff's secretary prepared a substituted application. Although the application was signed "Mary Parker," she did not actually sign it. The application indicated that Mary Parker had not taught at the school until 1988, although she had previously taught as early as 1985, prior to her graduation from college. The substituted application was dated for fall 1988.
 
 
 5
 On January 25, 1989, plaintiff and defendant Martin, who was then Provost of the Southeast Campus of TJC, discussed the application and hiring of Mary Parker. On January 30, 1989, plaintiff met with defendants Benton and Martin. At that time, plaintiff was given the option of resigning or facing termination proceedings. At plaintiff's request, she was given a week to make her decision. On February 1, 1989, plaintiff met with defendant VanTrease, who at that time was Executive Vice President of TJC. According to plaintiff, he informed her that the Board of Regents had always upheld the college in making termination decisions.
 
 
 6
 Plaintiff submitted her letter of resignation on February 6, 1989. She stated in the letter that she was resigning to finish work on her Ph.D. On February 8, 1989, the Board of Regents voted to accept her resignation. On April 25, 1989, plaintiff wrote a letter to the President of TJC indicating that she had been forced to resign under the threat that if she did not resign she would be terminated.
 
 
 7
 Plaintiff subsequently commenced this action alleging that she had been constructively discharged. Defendants filed a motion for summary judgment alleging that qualified immunity protected their actions. Because material facts concerning constructive discharge were in dispute, the district court denied defendants' motion for summary judgment. Essentially, the district court determined plaintiff was entitled to a hearing before she made her choice. Defendants appealed.
 
 
 8
 The district court's denial of qualified immunity is appealable as a final order under 28 U.S.C. § 1291. Mitchell v. Forsyth, 472 U.S. 511, 526-27, 105 S.Ct. 2806, 2815-16, 86 L.Ed.2d 411 (1985). We review the denial de novo. Patrick v. Miller, 953 F.2d 1240, 1243 (10th Cir.1992). "[W]e need only determine whether defendants violated 'clearly established statutory or constitutional rights of which a reasonable person would have known' at the time the challenged conduct occurred." Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). This is a test of objective reasonableness as compared with the state of the law at the time of the alleged violation. Jantz v. Muci, 976 F.2d 623, 627 (10th Cir.1992).
 
 
 9
 Because qualified immunity protects defendants from trial and personal liability, the review of the district court's denial of summary judgment differs from the review of a summary judgment disposition on the grounds of an affirmative defense. Id.; Patrick, 953 F.2d at 1243.
 
 
 10
 Once a defendant asserts qualified immunity, "[t]he plaintiff carries the burden of convincing the court that the law was clearly established." More specifically, the plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred." Plaintiff's burden cannot be met merely by identifying in the abstract a clearly established right and then alleging defendant violated that right.... [T]he plaintiff must make a more particularized showing--"[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."
 
 
 11
 Patrick, 953 F.2d at 1243 (citations omitted).
 
 
 12
 Once the plaintiff meets her burden of proving a clearly established law and conduct by the defendants which violates the law, the defendant then has the burden of the movant under summary judgment to show that no material facts are in dispute which would defeat the claim of qualified immunity. Jantz, 976 F.2d at 627. Upon our review, we then consider in the light most favorable to the plaintiff all the undisputed facts submitted at the time the motion for summary judgment is made. Patrick, 953 F.2d at 1243. We determine whether there are sufficient material facts relating to the claim of immunity to require the defendant to stand trial. Id.
 
 
 13
 Defendants argue that the law was not clearly established that they were required to provide plaintiff with a hearing before giving her the choice to resign or face termination proceedings pursuant to applicable and legally sufficient due process procedures. Also, they argue that plaintiff did not prove their conduct deprived her of her due process rights. Accordingly, they maintain that plaintiff's action is barred by the doctrine of qualified immunity.
 
 
 14
 To determine whether plaintiff's action is barred by qualified immunity, we first consider whether she was deprived of a protected property interest by defendants causing her resignation without due process. There is no dispute that plaintiff had a constitutionally protected property interest in employment because she could only be discharged pursuant to her employee handbook for just cause. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); Logan v. Zimmerman Brush Co., 455 U.S. 422, 430, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982). When an employee has a property right in continued employment, the employer cannot deprive the employee of that property right without due process. Loudermill, 470 U.S. at 538, 105 S.Ct. at 1491.
 
 
 15
 Because plaintiff does have a protected property interest, we consider whether the law was clearly established such that she was deprived of that interest by defendants' actions. Plaintiff must show that there was a clearly established law when she resigned which gave her a right to a hearing prior to deciding whether to resign or participate in the termination process and that defendants deprived her of that right.
 
 
 16
 The law in effect at the time of plaintiff's resignation indicates that the voluntariness of the decision to resign is determinative of whether qualified immunity would bar this action. If she resigned of her own free will, even though doing so due to actions of defendants, she voluntarily relinquished her property interest and was not deprived of her property interest without due process. See Stone v. University of Md. Medical Sys. Corp., 855 F.2d 167, 173 (4th Cir.1988). If, however, her resignation was so involuntary it amounted to a constructive discharge, defendants did deprive her of her property interest without due process. See id.
 
 
 17
 A resignation will be involuntary and coerced when the totality of the circumstances indicate the employee did not have the opportunity to make a free choice. Id. at 174; see also Scharf v. Department of Air Force, 710 F.2d 1572, 1574 (Fed.Cir.1983) (to determine if resignation is voluntary look at circumstances to determine if employee had opportunity to exercise free choice).
 
 
 18
 Factors to be considered are (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether he was permitted to select the effective date of resignation.
 
 
 19
 Stone, 855 F.2d at 174; see also Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir.) (resignation resulting from choice between resignation and dismissal proceedings is not a discharge by coercion if the employee is given time and opportunity for deliberation before making a choice), cert. denied, 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982). A choice between resignation or termination does not establish that the resignation was involuntary, unless the employer lacked good cause to believe that there were grounds for termination. Stone, 855 F.2d at 174; cf. Illinois ex rel. Schoepf v. Board of Educ. of Morton High Sch., Dist. 201, 606 F.Supp. 385, 390 (N.D.Ill.1985) (due process claim waived when choice between resignation and separation was voluntary because employee could not show his superior knew or believed the reason for the proposed separation could not be substantiated).
 
 
 20
 Contrary to her argument that her resignation was coerced causing constructive discharge, plaintiff has not shown that the choice between resignation or facing termination caused her resignation to be submitted under duress and that she had no real choice. The evidence indicates that there were adequate reasons, relating to the hiring of her daughter as a part-time instructor without a college degree and the preparation of the substituted application, for defendants to threaten plaintiff with termination. Plaintiff was well aware of the nature of the charges and her rights as a tenured employee to due process proceedings. She was given a week to decide whether to resign. During that time period she had ample opportunity to consult with an attorney if she chose to do so. She did not request a hearing. Plaintiff admits that she feared termination because it could have an adverse affect on her career in academic administration. Although plaintiff subsequently wrote a letter to the President of TJC claiming she had been forced to resign, the letter is not sufficient to establish that she did not make a considered and voluntary decision to resign.
 
 
 21
 Under the circumstances of this case, we conclude plaintiff voluntarily chose to resign and was not constructively discharged. We refuse to conclude that the offering of a choice under the circumstances of this case was a constructive discharge. Because her resignation was voluntary, there was no deprivation of her property interest in employment. See Stone, 855 F.2d at 173 n. 7. Thus, she was not entitled to a hearing before she made her choice to resign rather than to face termination proceedings. There is no violation of due process, because plaintiff chose to end her employment without a hearing and not to avail herself of the available due process procedures. Dusanek, 677 F.2d at 542-43.
 
 
 22
 The district court relied upon two cases in reaching its decision to deny qualified immunity: Bailey v. Kirk, 777 F.2d 567 (10th Cir.1985), and Findeisen v. North East Indep. Sch. Dist., 749 F.2d 234 (5th Cir.1984), cert. denied, 471 U.S. 1125, 105 S.Ct. 2657, 86 L.Ed.2d 274 (1985). We conclude these cases are factually distinguishable from a situation, such as the one in this case, where the resignation decision was made voluntarily.
 
 
 23
 We conclude that plaintiff did not prove that the law was clearly established such that she had a right to a hearing before deciding whether to resign or face termination proceedings. Accordingly, we hold that defendants are entitled to qualified immunity.
 
 
 24
 The judgment of the United States District Court for the Northern District of Oklahoma is REVERSED.
 
 
 
 *
 Honorable Dale E. Saffels, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 Plaintiff, on appeal, has not continued to assert that her resignation was also obtained by misrepresentation
 
 
 [2]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument