F I L E D
United States Court of Appeals
Tenth Circuit

FEB 17 1998

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOANIE PHILLIPS,

     Plaintiff-Appellant,

v.

CITY OF GUTHRIE, OKLAHOMA,
a municipal corporation,

     Defendant-Appellee,

ROBERT BUETTNER, individually and
in his official capacity as Chief of Police;
PATSY SANDEFUR, in her official
capacity as City Manager,

     Defendants.

No. 96-6369
(D.C. No. CIV-94-346)
(Western District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **BLACK**,[**] District Judge.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable Bruce D. Black, District Judge, United States District Court for the District of New Mexico, sitting by designation.

Joanie Phillips brought an action pursuant to 42 U.S.C. § 1983 against the City of Guthrie ("City") and six of its officials, including the Chief of Police, the City Manager, and four fellow police officers.[1] All of the named defendants except the City were later dismissed from the case, and none are involved in the present appeal. The district court in a 27-page order granted the City's motion for summary judgment, and judgment was duly entered for the City. Phillips appeals. We affirm. Some background facts are in order.

There was considerable discovery, including the depositions of most of the parties involved in this controversy. From such, we learn that Phillips was hired as a police officer by the City on October 2, 1989. On March 9, 1992, Phillips was sent to a disturbance call which resulted in two males being arrested. Lieutenant Dan Belk, a fellow officer who was Phillips' supervisor, ordered Phillips to transport one of the arrestees in her vehicle to the police station. Phillips' vehicle was an "uncaged" vehicle and she refused to transport the arrestee because she feared for her personal safety, although apparently, on other occasions, she had transported prisoners in an "uncaged" police vehicle.The arrestee, incidentally, was eventually transported to the police station in a "caged" vehicle.

On March 10, 1992, Lt. Belk called Phillips into his office to question her about her refusal to obey his order of the previous day regarding the transportation of the

---

[1]The Chief of Police was sued individually and in his official capacity. The City Manager was sued only in her official capacity. The four fellow officers were sued individually, and not in their official capacity.

arrestee to the police station and at that time he advised her that she was going to have to attend some "remedial training" or possibly be demoted. Their conversation quickly escalated and the two went to the offices of Major Harry Downs. During that meeting Major Downs also suggested "remedial training," whereupon Phillips removed her badge, gun and ammunition clip and left the building several hours before the completion of her duty shift. During the next two days there were several telephone calls between Phillips and Major Downs in which Phillips was informed that she could expect disciplinary action based on her insubordination on March 9, 1992, and also abandoning her duty shift on March 10, 1992.

A further meeting was next held on March 12, 1992, before Robert Buettner, the Chief of Police, at which time both Phillips and Major Downs were present. During the course of that conversation, Chief Buettner explained, *inter alia,* that she had the "option" of resigning, or face possible disciplinary action, which "paperwork" would be placed in her file. Thereupon, Phillips wrote out in longhand her resignation and left the room. She returned minutes later, after having discussed the matter with her husband who had been waiting in the hallway, and announced that she wanted to withdraw her resignation letter. The Chief denied her verbal request. Later, on that same date, Phillips wrote a letter to Patsy Sandefur, the City Manager of Guthrie, requesting a retraction of her resignation letter. A copy of Phillips' letter is Attachment A. On March 17, 1992, Sandefur, by letter, denied, in effect if not in so many words, her request. A copy of

- 3 -

Sandefur's letter is Attachment B.

In her complaint, Phillips alleged four causes of action. The first cause of action was against the City only, and was based on 42 U.S.C. § 1983. Specifically, Phillips alleged that the City failed to train its employees and had tolerated and encouraged illegal harassment, denial of due process and equal protection and also failed to investigate and prosecute employees who engaged in such practices. The second cause of action was under 42 U.S.C. § 1985 and alleged a conspiracy by the defendants to violate Phillips' constitutional rights. So far as we can tell, Phillips does not pursue, on appeal, the dismissal of her second cause of action. The third cause of action was under 42 U.S.C. § 1983 and was against the individual defendants, and not the City, alleging that they had violated her constitutional rights. The fourth and last count was against the City, only, and alleged that the city had breached its contract of employment with her. As we have above stated, in this appeal we are only concerned with Phillips' claims against the City, which would only involve the first and fourth counts of her complaint.

The operative facts are not in dispute. On March 9, 1992, Phillips disobeyed an order from her supervisor, Lt. Belk, to transfer an arrestee to the police station in an uncaged vehicle. On March 10, 1992, she conferred with Lt. Belk in his office concerning the incident of the previous day. After some discussion of the matter, the two adjourned to the office of Major Downs. When Major Downs suggested that Phillips might need some "remedial training," Phillips removed her badge, gun and ammunition

- 4 -

clip and left the building. On March 12, she met with Chief Buettner and Major Downs. It would appear that there was no mention at that time about possible termination, although, in response to inquiry, Chief Buettner did state that Phillips had the option of simply "resigning," or, alternatively, she could face possible disciplinary action, which "paperwork" would become a part of her employment file. Apparently Phillips did not want any derogatory material in her file, believing it might bear unfavorably on possible future employment. In any event, at this point Phillips wrote, in longhand, her letter of resignation. That letter read as follows:

> "3/10/92
> As of this date I will be putting [sic] my official
> Resignation as a Police Officer with the Guthrie
> Police Department.
> Joanie Phillips"

Soon after Phillips left Chief Buettner's office, she returned and indicated that she changed her mind, and asked to withdraw her resignation. The Chief denied her request. On the same day, March 12, 1992, Phillips wrote a letter to Sandefur, requesting a "retraction" of her letter of resignation. Although Sandefur, in her letter of March 17, 1992, did not, in so many words, deny Phillips' request, she did state, *inter alia,* that she had concluded after receiving the reports from fellow officers and Major Downs and Chief Buettner that Phillips had "resigned" on March 10, 1992 when "[she] turned in [her] badge and left [her] duty post."

On appeal, Phillips asserts that the district court erred in granting the City's motion

for summary judgment. Phillips argues that there were sufficient facts to show that, even though she had "resigned," she was, under the circumstances, actually "constructively discharged" and, further, that in denying her subsequent request to withdraw her resignation, the City, acting through the Chief of Police and the City Manager, had deprived her of certain rights guaranteed her by the United States Constitution and statutes, including her right to equal protection. In the latter regard, it is apparently Phillips' belief that, if she had been a male, her request to withdraw her resignation would have been granted. There is little, or nothing, in the record to substantiate such a belief, and we note that the City Manager is a female.

In this court, Phillips' main argument is that she was constructively discharged as a police officer of Guthrie, and that, in any event, she should have been allowed to withdraw her purported resignation. In her original complaint there were allegations that the City "failed to adequately train" its employees and that there was a hostile work environment directed towards female employees. The record, however, does not support such allegations.

*Parker v. Board of Regents of Tulsa Junior College,* 981 F.2d 1159 (10th Cir. 1992) sheds light on the present controversy. In that case, Parker, a former departmental chairman at the junior college, brought a civil rights action under 42 U.S.C. § 1983 against the Board of Regents and various administrators of the school, alleging that she had been constructively discharged from her employment when she resigned after being

given a choice to resign or face termination proceedings. The defendants' motion for summary judgment was denied, and, on appeal, we reversed. In so doing, we agreed that Parker had a property interest in continued employment at the college, but held that she voluntarily chose to resign and was not constructively discharged. In this latter regard, we stated that a choice between resignation or actual termination did not, in itself, establish that her resignation was involuntary, unless the employer lacked good cause to believe that there were grounds for termination. In the instant case, certainly the City had reason to believe that there were grounds for disciplinary action of some sort. Phillips disobeyed a direct order of her supervisor on March 9, 1992. On March 10, 1992, she, in effect, threw down her badge and gun and walked off the job. And on March 10, 1992, Phillips wrote a letter of resignation when informed that she would be the subject of disciplinary proceedings for her conduct.

In *Parker*, we stated that a resignation would be involuntary and coerced where the "totality of the circumstances" indicated the employee did not have the opportunity to make a free choice. And one of the circumstances mentioned by us in *Parker* was whether the employee was given a reasonable time within which to choose between resignation and termination proceedings. In *Parker,* the employee was given one week to decide whether to resign. In our case, there was no discussion about giving Phillips time to "think it over." Phillips requested none, and simply wrote out in longhand her resignation letter. However, we do not think that such, in itself, created an issue of fact as

to whether the resignation was voluntary, or not.

In *Parker,* we cited with approval *Stone v. University of Maryland Medical System Corp.,* 855 F.2d 167 (4th Cir. 1988). In *Stone,* the employee "resigned" more or less "on the spur of the moment," with no appreciable time interval "to think it over." However, in *Stone* the Fourth Circuit held that the resignation was nonetheless voluntary and not coerced and that the district court did not err in granting the defendants' motion for summary judgment. In so doing, the Fourth Circuit spoke as follows:

> Stone's more substantial argument is that his resignation was the result of "duress, threats, intimidation and coercion" on the part of his superiors. His argument is, in essence, that he was forced to make the personally and professionally difficult decision whether to resign or face termination proceedings on the spur of the moment, while he was upset and confused and without the advice of counsel or the opportunity to consult family and friends. *See* Appellant's Brief at 6-9. But the mere fact that Stone was forced to choose between the inherently unpleasant alternatives of resignation and possible termination for cause does not itself mean that his resignation was submitted under duress, absent evidence that his superiors lacked good cause for the threatened termination. That showing has simply not been made here.
>
> * * * * *
>
> It is true that Stone was forced to make the decision whether to resign or face removal proceedings under some time pressure and that he do so without the advice of counsel. Under different circumstances, these facts might be sufficient to raise a genuine issue as to the voluntariness of his resignation. *See Paroczay v. Hodges,* 297 F.2d 439 (D.C. Cir. 1961). In this case, however, those facts lose their significance when they are viewed against the background of the summary judgment record as a whole.

*Stone,* 855 F.2d at 177.

Applying the rationale of *Parker* and *Stone* to the facts of the instant case, we agree that the district court, "against the background of the summary judgment record as a whole," did not err in holding that Phillips' resignation was voluntary and not coerced and that her property interest in continued employment as a Guthrie police officer was not violated by the City. Certainly there was no "misrepresentation" by the City. And it would seem to follow, that in denying her later request to withdraw her resignation, the City did not violate well established constitutional rights belonging to her. As above noted, the City Manager stated that Phillips "resigned" when she walked off the job on March 10, 1992, two days before she wrote her letter of resignation.

Judgment affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge

ATTACHMENT A

March 12, 1992
Patsy Sandefur
City Manager
Guthrie, Oklahoma

Re: Retraction of Letter of Resignation

Dear Ms. Sandefur:

I am requesting to retract the letter of resignation which I made on 3-12-92. Due to the situations surrounding the letter, I would like to state that my resignation was made under what I feel was duress and at a time when I was under a great deal of mental stress. I was unable to make an informed decision and request it's retraction. I attempted to reverse my decision prior to leaving the police station but was refused by Chief Buettner and told to leave. Chief Buettner refused by stating "No, it's over."

I would further request a Due Process Hearing in reference to this matter, which I believe is my right. I appreciate your attention in this matter. Please contact me as soon as a decision has been reached. I feel that this would be advantageous to all parties involved.

Thank You,

/s/ Joanie F. Phillips

Joanie F. Phillips

ATTACHMENT B

March 17, 1992

Ms. Joanie Phillips
Route 3, Box 244
Guthrie, Oklahoma 73044

RE: Your Letter of March 13, 1992

Dear Ms. Phillips:

I have received your letter of March 13, 1992 wherein you request retraction of your Letter of Resignation written on March 12, 1992. You further request a Due Process hearing in reference to the matter.

I have reviewed the reports from your fellow officers and Maj. Downs and Chief Buettner, regarding this incident. I have concluded that you resigned from your position in the Guthrie Police Department on Tuesday, March 10, 1992 at approximately 11:00 a.m. when you turned in your badge and left your duty post.

I am of the opinion that if you wished to file a grievance regarding the incident, City policies make provision to any employee who wishes to exercise this right. You did not choose to inform anyone in the Police Department of your grievance but instead abandoned your job.

If you feel that you have any documentation relative to this issue, that you would like for me to review, please submit it to me, in writing, as soon as possible.

You must realize, however, that a Due Process hearing is a process granted to an employee for the express purpose of correction of inappropriate performance or behavior. All employee rights were relinquished by you when you voluntarily terminated your employment with the City of Guthrie on Tuesday morning, March 10, 1992.

Sincerely,
/s/ Patsy Sandefur
Patsy Sandefur
Interim City Manager

- 11 -