**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 15, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DANIEL M. HESSE,

      Plaintiff-Appellee,

v.

TOWN OF JACKSON, WYOMING,

      Defendant,

and

MARK BARRON; ROBERT
MCLAURIN; ROXANNE DEVRIES
ROBINSON; SCOTT ANDERSON, in
their individual capacities,

      Defendants-Appellants.

No. 07-8032

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF WYOMING
(D.C. No. 06–CV–155–B)**

---

Richard Rideout, Cheyenne, Wyoming, for Defendants-Appellants.

Gary Shockey, Jackson, Wyoming, for Plaintiff-Appellee.

---

Before **BRISCOE**, **McKAY**, and **LUCERO**, Circuit Judges.

---

**McKAY**, Circuit Judge.

Defendants–Appellants the mayor, town administrator, town clerk, and one of the town council members of Jackson, Wyoming, appeal the district court's denial of qualified immunity in an employment termination case brought by Plaintiff–Appellee, the former town attorney.

## BACKGROUND

Plaintiff worked as Jackson, Wyoming's town lawyer on a contract basis from 1995 to 2005. The most recent version of Plaintiff's contract with the town, the 1999 version, provided for automatic renewal of Plaintiff's two-year term of employment under the contract unless either party gave written notice of a desire to terminate the agreement at least 180 days prior to its termination date. Each two-year term began on July 1, every other year. To prevent automatic renewal, the town council needed to notify Plaintiff of its intent to terminate the agreement by January of each renewal year. Plaintiff did not receive notice of termination in January 2005 for the July 2005–June 2007 term of contract, and the contract was automatically extended for that additional period.

In March 2005, just before Plaintiff's newest two-year term began but after the time period for notice of termination had passed, Plaintiff had a heated argument with the town administrator. This conversation was triggered when the town clerk sent an employee to Plaintiff with a work-related request. Plaintiff was upset at the request because he felt it was out of the scope of his duties, and

he said as much to the employee. The employee complained to the town clerk, apparently about the manner in which Plaintiff spoke to her.

The town clerk then approached Plaintiff directly to discuss the situation and told Plaintiff "you need to act in accordance with the [Town] values in your dealings with [the employee]." (R. at 340.) Plaintiff responded, "You work for a person [the town administrator] who has no [more] respect for those values or ethics than the man in the moon and until he wants to get in shape with these values, I'm not talking to you, get out of here." (R. at 341.) By this comment, Plaintiff was referring to the town administrator's support of the mayor, who had recently encouraged two large town land purchases that Plaintiff believed to be inappropriate. After the conversation between Plaintiff and the town clerk, the clerk complained immediately to the town administrator, who then proceeded directly to Plaintiff's office to discuss the matter.

Plaintiff explains he discussed several topics with the town administrator during their inflammatory conversation, including the administrator's own compliance with town values, the advisability of the town's recent land purchases, and the town governing body's adherence to open meeting laws. When discussing the administrator's adherence to town values, Plaintiff called the town administrator a "liar" and suggested that the administrator was indeed a "whore" for the mayor and town council, as the administrator had once described himself in jest. (R. at 364, 538.) Toward the end of the conversation, Plaintiff requested

-3-

that the town administrator not share with the town council the concerns Plaintiff had voiced during the conversation.

At some point during the conversation, the administrator's cell phone rang. He fiddled with it, stopped the ringing, and put it in his pocket. The town clerk was the person trying to reach the town administrator, and she tried twice to call him. On the second try, she realized that she was connected to his phone but that he was speaking to Plaintiff, not to her. She began to listen to the conversation, placing it on speaker phone in her office. At some point during the conversation, a town council member entered the town clerk's office and also eavesdropped on the conversation. After some unspecified period of time, the town clerk and town council member stopped listening to the argument and hung up the phone. The eavesdropping town council member then informed the mayor about the conversation, and the eavesdropping town clerk told a town financial officer, who subsequently relayed to Plaintiff that Plaintiff's argument with the town administrator had been overheard.

In May or June of 2005, the mayor and town administrator contacted a lawyer about how to terminate Plaintiff. On July 28, 2005, shortly after Plaintiff's newest two-year term had begun, the mayor called Plaintiff into his office and told Plaintiff that he was requesting the town council to fire Plaintiff at its August 1 meeting unless Plaintiff resigned. The mayor allegedly explained that if Plaintiff resigned, the mayor would ask the town council to honor

-4-

Plaintiff's employment contract to pay him six months' severance benefits under the termination clause. Plaintiff wrote a resignation letter that day, which he made effective August 1, and gave it to the mayor the same day. Plaintiff then received and accepted six months' of severance pay and health benefits.

After the six months had passed, Plaintiff sued the town and Defendants, in their official capacities and as individuals, on various state and federal claims. Defendants filed a summary judgment motion against Plaintiff, but the district court denied their motion on all claims, including their claim for qualified immunity. Defendants then filed this interlocutory appeal on the issue of qualified immunity.

## DISCUSSION

"Orders denying qualified immunity before trial are appealable to the extent they resolve abstract issues of law." *Clanton v. Cooper*, 129 F.3d 1147, 1152 (10th Cir. 1997) (internal quotation marks omitted). We review the denial of a summary judgment motion raising qualified immunity questions de novo, *Holland v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001), viewing the evidence and drawing reasonable inferences therefrom in the light most favorable to the nonmoving party using our ordinary summary judgment standard, *Lawmaster v. Ward*, 125 F.3d 1341, 1346 (10th Cir. 1997). However, when viewing evidence from summary judgment orders deciding qualified immunity questions, we must not determine whether an issue of fact is genuine. *See*

*Johnson v. Jones*, 515 U.S. 304, 319 (1995).  Nevertheless, we may determine whether "a given set of facts violates clearly established law."  *See id.*  In addition,

> [b]ecause of the underlying purposes of qualified immunity, we review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions.  After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, and the plaintiff must first establish that the defendant's actions violated a constitutional or statutory right.

*Holland*, 268 F.3d at 1185 (internal citation and quotation marks omitted).

The threshold question, then, in a qualified immunity appeal from summary judgment is:  "Taken in the light most favorable to the party asserting the injury, [without determining whether there is a genuine fact issue,] do the facts alleged show the [official's] conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir. 2007).  "If the court concludes no constitutional right has been violated, no further inquiry is necessary and the defendant is entitled to qualified immunity."  *Reeves*, 484 F.3d at 1250.  However, if the inquiry indicates a violation of a constitutional right occurred, we must then "determine whether that right was clearly established at the time of the alleged violation."  *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *see Reeves*, 484 F.3d at 1250.  If "the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant

qualified immunity." *Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003) (internal quotation marks omitted).

In this case, we conclude that the matter is determined at the first stage of the inquiry. As an initial matter, we reject Defendants' argument that a constitutional violation occurred only if Defendants violated federal law. A § 1983 action must be based on the violation of a federal *right* not a federal *law*. The Supreme Court has explained:

> [t]he problem is not whether state law has been violated but whether an inhabitant of a State has been deprived of a federal right by one who acts under color of any law. He who acts under color of law may be a federal officer or a state officer. He may act under color of federal law or of state law. The statute does not come into play merely because the federal law or the state law under which the officer purports to act is violated. It is applicable when and only when someone is deprived of a federal right by that action. The fact that it is also a violation of state law does not make it any the less a federal offense punishable as such.

*Screws v. United States*, 325 U.S. 91, 108 (1945) (internal quotation marks omitted). Therefore, to defeat Defendants' qualified immunity request, Plaintiff must demonstrate that Defendants violated one of his federal rights, not a federal law.[1] Consistent with this standard, Plaintiff contends Defendants violated his federal rights to a property interest in continued public employment, free speech, and freedom from unreasonable searches and seizures.

---

[1] Because we conclude no individual Defendant violated any of Plaintiff's federal rights, we refer to Defendants as a group for ease in reading, even though they appear before us as individuals.

## I. Continued Public Employment

We first review Plaintiff's claim that Defendants violated his constitutionally protected property interest in continued public employment. "It is well-established constructive discharge from employment is actionable under § 1983 if an employee possesses a protectable property or liberty interest in his employment." *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1221 (10th Cir. 2000). In the employment context, a property interest is "a legitimate expectation in continued employment." *Id.* (internal quotation marks omitted). "We determine whether such a property interest exists by looking at state law." *Id.*; *see Bishop v. Wood*, 426 U.S. 341, 344 (1976).

Under Wyoming law, "[p]roperty interests in continued public employment are created and defined by independent sources such as state statutory law, regulations or the terms of employment." *Lucero v. Matthews*, 901 P.2d 1115, 1119 (Wyo. 1995); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577–78 (1972) (explaining state statutes or terms of appointment may provide employees with protected property interests in employment). Essentially, a Wyoming public employee whose employer may fire him at will for any reason or for no reason at all does not possess a property interest in continued public employment, but an employee who may be fired only for cause, such as "[a] nonprobationary, as well as a tenured, public employee[,] is entitled to written

-8-

notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Lucero*, 901 P.2d at 1120 (explaining a nonprobationary employee whose job was statutorily and constitutionally protected was entitled to notice and an opportunity to be heard and could only be fired for cause); *see also Parker v. Bd. of Regents of the Tulsa Junior Coll.*, 981 F.2d 1159, 1160 (10th Cir. 1992) (analyzing whether a tenured public employee who could have been "terminated only for 'just cause'" had voluntarily resigned from her position, thus waiving her right to her protected property interest in continued public employment).

In this case, a state statute, a town ordinance and resolution, and an employment contract all purportedly define Plaintiff's terms of employment. We now consider whether any of these documents provided Plaintiff with a constitutionally protected property interest in continued public employment

<u>Wyoming Statute § 15-3-204(a) and the 1995 Town Ordinance</u>

The Wyoming statute directly applicable to the appointment and removal of a town attorney states: "Unless otherwise provided by ordinance, the . . . attorney . . . shall be appointed by the mayor with the consent of the governing body and may be removed by the mayor." Wyo. Stat. Ann. § 15-3-204(a) (2007).[2] Thus,

---

[2] This statute applies to first class cities. Jackson became a first class city in 2004. *See* Town Council Proceedings, Jackson, Wyo. (2004), http://www.townofjackson.com:8307/agendas/2004/2004pkts/050304/Consent/
(continued...)

this statute expressly explains a town attorney may be removed by the mayor unless an ordinance provides otherwise.[3]  "'Ordinance' means a legislative enactment of general effect validly adopted by the governing body of any city or town." Wyo. Stat. Ann. § 15-1-101 (2007).  The Wyoming Supreme Court has examined the difference between an ordinance and a resolution, stating that "a resolution deals with matters of a special or temporary character; an ordinance prescribes some permanent rule of conduct or government, to continue in force until the ordinance is repealed." *Mathewson v. City of Cheyenne*, 61 P.3d 1229, 1233 (Wyo. 2003) (internal quotation marks omitted).  It has also explained that "[a]n ordinance is distinctively a legislative act; a resolution, generally speaking, is simply an expression of opinion or mind or policy concerning some particular

---

[2](...continued)
041904wk.pdf; Town Council Agenda Documentation (2004), http://www.townofjackson.com:8307/agendas/2004/2004pkts/070604/Ordinances/charters.pdf.
    [3] Although the statute does not specifically indicate that a mayor has the power to remove the town attorney without cause, the Wyoming Supreme court has interpreted the statute as granting mayors the absolute right to hire and fire town officers, such as town attorneys, who hold managerial, policy-making positions. *See Carlson v. Bratton*, 681 P.2d 1333, 1335–37 (Wyo. 1984) (holding that town officers appointed by the mayor have no property right in their continued public employment because reasons of public policy grant a mayor the prerogative to work with officers who concur with the mayor's policies); *see also Farnsworth v. Town of Pinedale*, 968 F.2d 1054, 1057 (10th Cir. 1992) (concluding that Wyoming statutory language related to incorporated towns provides an incoming mayor with the authority to replace appointed town officers at the end of their respective terms of employment).  The town attorney position is a "position[] of management and the appointee[] thereto serve[s] at the pleasure of the mayor." *Carlson*, 681 P.2d at 1339.

item of business coming within the legislative body's official cognizance, ordinarily ministerial in character and relating to the administrative business of the municipality." *Cooper v. Town of Pinedale*, 1 P.3d 1197, 1207 (Wyo. 2000) (quoting 5 Eugene McQuillan, Municipal Corporations, *Nature and Operation of Ordinances* § 15.02, at 59 (3d ed. 1996)).

In this case, the state statute requires exceptions to the mayor's removal power to be provided by ordinance.[4] Jackson adopted Ordinance 499 in 1995, establishing the office of town attorney and providing that the terms and conditions of employment, duties, and responsibilities of the town attorney were to be established by resolution. *See* Jackson, Wyo., Ordinance 499 (1995), *available at* http:// www.townofjackson.com/ (follow "Jackson Government" menu hyperlink; then follow "Ordinances & Resolutions" hyperlink; then follow "Search Municipal Ordinances" hyperlink; then enter "Ordinance 499" into search box; then follow "Ordinance 499" hyperlink). Because the town passed an ordinance designating the process by which Jackson's town attorney could be appointed and removed, we conclude the process so designated supercedes the default removal provisions provided by the current state statute, even though the

_____

[4] The phrase "unless otherwise provided by ordinance" was added to the statute in 1997. *See* 1997 Wyo. Sess. Laws 68. We do not address which documents describing Plaintiff's employment terms and conditions might have been binding prior to 2005. We conclude only that the 1995 town resolution is one of the binding documents we must analyze to address the 2005 claim.

-11-

designated process itself involved a resolution. Thus, we consider the town's

1995 resolution, established by ordinance, to be one of the binding documents

under which we must analyze Plaintiff's claims.

The 1995 Town Resolution

The town resolution provides: "The Town Attorney shall be hired and may

be removed by the mayor, by and with the advice and consent of a majority of the

Town Council." Resolution 95-10, *available at* http:// www.townofjackson.com/

(follow "Jackson Government" menu hyperlink; then follow "Ordinances &

Resolutions" hyperlink; then follow "Search Municipal Resolutions" hyperlink;

then enter "95-10"into search box; then follow "Resolution 95-10" hyperlink).

The *Carlson* court indicated that "limiting phrase[s]," *Carlson*, 681 P.2d at 1336,

such as "by and with the advice and consent of the city council," *id.* at 1335 n.1,

and "according to conditions fixed by the governing body" could not "be taken to

hamstring the mayor in controlling his executive duties," *id.* at 1336. The court

further held that a town officer does not have a "property right in the office."

*Carlson*, 681 P.2d at 1337.

We note that the town resolution provides that the town attorney "shall be .

. . subject to all Town of Jackson personnel policies, regulations and procedures,

except as hereinafter provided." Resolution 95-10. However, we conclude the

express resolution language giving the mayor the power to remove the town

attorney trumps any conflicting general town policies. Thus, based on the resolution's express language and Wyoming case law interpreting similar language, we conclude the town resolution provided the mayor with the power to remove Plaintiff at will. Therefore, we hold that the 1995 town resolution does not provide Plaintiff with a constitutionally protected interest in continued public employment.

The Contract

We next turn to the question of whether Plaintiff had a property interest in his continued public employment by contractual arrangement. Wyoming case law interpreting § 15-3-204(a) allows for changes to be made by contract. *See Carlson*, 681 P.2d at 1339 (explaining officers such as town attorneys "do[] not have tenure in employment unless such tenure is established" by statute or by contract, among other things).[5] We therefore also analyze Plaintiff's claim under his contractual provisions.

The contracts Plaintiff signed with the town in 1995, 1997, and 1999 purport to define Plaintiff's terms and conditions of employment. Plaintiff's 1999 contract, if valid, automatically renewed unless either party gave advance notice

_____

[5] We note that this precedent predates the 1997 amendment to the statute. However, because we conclude Plaintiff's contract did not alter the mayor's removal power, we need not and do not address whether the court-created contractual exception to the statute survived the 1997 amendment.

of termination.  The 1999 contract states that it "establish[es] certain conditions of employment" and "provide[s] a just means for terminating [Plaintiff's] services at such time as . . . when Employer may otherwise desire to terminate [Plaintiff's] employ."  (R. at 668.)  The contract provides that "[n]othing in this agreement shall prevent, limit or otherwise interfere with the right of the Town Council to terminate the services of the Employee at any time, subject only to the provisions set forth in Section 4, paragraph A(1) and A(2), of this agreement."  (R. at 669.) Section 4 then provides in pertinent part:

> In the event [Plaintiff] is terminated by the Town Council before expiration of the aforementioned term of employment without cause, and during such time that [Plaintiff] is willing and able to perform his duties under this agreement, then in that event Employer agrees to pay [Plaintiff] his regular salary for six (6) months and his health insurance coverage for six (6) months with the same eighteen month provision as provided for in he [sic] Town of Jackson Personnel Policy Manual . . . .
>
> . . .
>
> In the event [Plaintiff] is terminated for just cause, then Employer shall have no obligation to pay any severance sum designated in this agreement.

(R. at 670.)  Thus, the express contract language does not support Plaintiff's contention that his contract provides him with a protected property interest in continued public employment because the contract makes it abundantly clear that Plaintiff's employer could terminate him without cause at any time.[6]

---

[6] The contract gives the town council the power to terminate the town

(continued...)

-14-

Although Plaintiff argues that he was a nonprobationary employee and thus that he could be fired only for cause, we reject this contention based on the differences between Plaintiff's job and the jobs of employees held to be nonprobationary in *Lucero* and *Parker*, the two most relevant cases. In *Lucero*, a sheriff who was terminated had been designated by statute as a "sworn nonprobationary, full-time" deputy. *Lucero*, 901 P.2d at 1119. The statute provided a means for his termination and created "a property right in the position of a full-time deputy sheriff by requiring that any termination of employment be *for cause* and after notice and opportunity for a hearing." *Id.* at 1119–20 (emphasis added). As a nonprobationary employee who could be fired for cause only, the *Lucero* plaintiff enjoyed a constitutionally protected right of continued public employment and was protected by the safeguards designated to secure that right.

Likewise, in *Parker*, the court made clear at the outset that it was analyzing the alleged resignation of a tenured professor who could only be terminated for "just cause." *Parker*, 981 F.2d at 1160 (internal quotation marks omitted). The

---

⁶(...continued)
attorney, while the resolution gives the power of removal to the mayor. We need not address the differences between the two terminating entities because, in any event, both entities are entitled to qualified immunity for Plaintiff's discharge based on our conclusion that Plaintiff had no constitutionally protected property interest in his continued public employment under either the contract or the resolution.

-15-

court explained the professor "had a constitutionally protected property interest in employment because she could only be discharged pursuant to her employee handbook for just cause." *Id.* at 1161.

Wyoming employees who serve in managerial, policy-making positions serve at the pleasure of the mayor unless specified otherwise by statute, contract, or "rules and regulations pursuant to statute or . . . having the force of contract." *Carlson*, 681 P.2d at 1339. Because Plaintiff was hired pursuant to a contract allowing for termination without cause, unlike the employees in *Lucero* and *Parker*, we conclude that Plaintiff was not a nonprobationary employee and that he did not have a constitutionally protected property interest in continued public employment.[7]

Neither the town ordinance/resolution nor Plaintiff's contract provide Plaintiff with a constitutionally protected property interest in continued public employment. Plaintiff has thus failed to meet the first prong of the qualified immunity analysis on his first federal claim. We therefore need not consider the second prong. Because Plaintiff's claim to a protected property interest in

---

[7] The only property interest Plaintiff arguably might have retained upon termination without cause was the six months' salary and insurance coverage package provided by contract for such a case. We do not address whether Plaintiff was terminated with or without cause because that issue is not before us. In any event, because Plaintiff actually received six months' salary and insurance coverage after leaving the town's employ, we conclude he cannot maintain a claim that Defendants violated any protected property interest in that regard.

continued public employment fails, we do not address any of the related issues Plaintiff raises in connection with that alleged violation, such as his due process and equal protection claims.

## II.    Free Speech

The second federal rights violation Plaintiff alleges is a violation of his constitutionally protected right of free speech.  Plaintiff bases this claim on the town clerk's and town council member's eavesdropping on his conversation with the town administrator and the mayor's subsequent alleged firing of Plaintiff in retaliation for Plaintiff's statements made during that heated interchange.

Our first inquiry under these circumstances is whether the employee spoke "pursuant to [his] official duties."  *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (holding that when public employees make statements pursuant to their official duties, they are not entitled to the same constitutional insulation the First Amendment may provide to public employees who make statements outside the course of performing their duties); *see also Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007) (stating explicitly that *Garcetti* adds an initial step to the now five-step "*Garcetti/Pickering*" analysis). Three months after the district court filed its order in this case, the *Brammer-Hoelter* court clarified (1) that the *Garcetti/Pickering* analysis requires us to first analyze whether the speech occurred pursuant to the public employee Plaintiff's

-17-

official duties and (2) that the inquiry ends after that initial step if the court answers this legal question in the affirmative. *See Brammer-Hoelter*, 492 F.3d at 1202–03 & n.4.

While "employees retain the prospect of constitutional protection for their contributions to the civic discourse," *Garcetti*, 547 U.S. at 422, they do not have First Amendment protection for statements made "pursuant to employment responsibilities," *id.* at 423–24. *See also Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1328 (10th Cir. 2007) ("[W]e are obliged to ask whether [plaintiff] met her burden by providing evidence that her expressions were made in her capacity as a citizen and not pursuant to her 'official duties.'"); *Greene v. Bd. of County Comm'rs*, 472 F.3d 794, 798 (10th Cir. 2007) ("[T]he crux of our inquiry in this case is whether [plaintiff's] activities . . . were pursuant to her duties . . . ."). "If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech 'simply reflects the exercise of employer control over what the employer itself has commissioned or created.'" *Brammer-Hoelter*, 492 F.3d at 1202 (citing *Garcetti*, 547 U.S. at 422). Thus, "speech relating to tasks within an employee's uncontested employment responsibilities is not protected from regulation." *Brammer-Hoelter*, 492 F.3d at 1203. The determination of whether a public employee speaks pursuant to official duties is a matter of law. *See id.* (stating that the district court

resolves the first three steps of the *Garcetti/Pickering* analysis while the trier of fact ordinarily resolves the last two.)

Viewing the facts in the light most favorable to the Plaintiff and without making any determination as to whether a genuine issue of fact exists, we conclude as a matter of law that Plaintiff's argument with the town administrator occurred in the course of his official employment responsibilities based on the undisputed facts concerning the context in which the conversation arose. According to both Plaintiff and the town administrator, the town administrator came to Plaintiff's office to discuss Plaintiff's interaction with another employee. The town administrator approached Plaintiff the same day the town clerk had complained to the town administrator about Plaintiff's disregard for town values in his dealings with other town employees. Although Plaintiff explains he and the town administrator heatedly discussed compliance with town values, the 810 West project, the Karns Meadow project, and public meeting laws before the town administrator left Plaintiff's office, we cannot and need not address whether the subject matter of the conversation creates a genuine issue of fact. However, we may conclude as a matter of law that Plaintiff spoke pursuant to his official duties given the lack of factual dispute regarding the context in which the conversation occurred.

Moreover, Plaintiff's contract explains that administrative issues "shall be subject to the administration of the Town Administrator." (R. at 668–69). It is undisputed that the parties' conversation arose in the context of Plaintiff and the town administrator needing to discuss the administrative issue of Plaintiff's treatment of town employees. According to Plaintiff's contractual terms and conditions of employment, that topic of discussion would appropriately be directed to the town administrator. We conclude Plaintiff's conversation with the town administrator occurred pursuant to his official duties because we cannot reasonably characterize Plaintiff's speech arising in the undisputed context of a conversation occurring for the purpose of addressing administrative issues and directed to the contractually appropriate party as speech occurring outside the scope of his employment responsibilities. Plaintiff therefore fails to pass the first step of the *Garcetti/Pickering* analysis.

We thus conclude Plaintiff's conversation with the town administrator did not enjoy First Amendment protection, and therefore none of Defendants' alleged actions related to this conversation could have violated Plaintiff's right to free speech. We thus hold that Plaintiff has failed to satisfy the first prong of the qualified immunity analysis as to this claim, and we conclude each Defendant is entitled to qualified immunity as to this issue.

III. **Searches and Seizures**

We construe Plaintiff's third claim to be an assertion that the eavesdropping on his conversation with the town administrator constituted an illegal search and seizure under the Fourth Amendment. *See* U.S. Const. amend. IV. However, we conclude that Plaintiff had no reasonable expectation of privacy in his work-related, run-of-the-mill quarrel with the town administrator in Plaintiff's office. We therefore hold Plaintiff cannot satisfy the first prong of the qualified immunity analysis as to this claim and conclude each Defendant is entitled to qualified immunity as to this issue.

We **REVERSE** the order of the district court denying qualified immunity and **REMAND** this case with direction to enter judgment granting qualified immunity to all Defendants on all federal claims. We do not address any remaining state claims.