**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

STEPHANIE SALAZAR,

      Plaintiff-Appellant,

v.

CITY OF COMMERCE CITY; GERALD
M. FLANNERY, in his individual
capacity; PAUL NATALE, in his
individual capacity; HEATHER OLSON,
in her individual capacity; TOM ACRE,
in his individual capacity,

      Defendants-Appellees.

No. 12-1390
(D.C. No. 1:10-CV-01328-LTB-MJW)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **ANDERSON**, Circuit Judge, and **BRORBY**, Senior
Circuit Judge.

Stephanie Salazar appeals from the district court's grant of summary judgment

in favor of defendants on her claims related to her termination from employment with

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the City of Commerce City ("City").  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  Background

Ms. Salazar was the Director of Economic Development ("ED") for the City from August 29, 2005, until her termination effective July 16, 2008.  She filed a complaint in district court alleging gender and national origin discrimination and retaliation in violation of Title VII; national origin discrimination and retaliation in violation of 42 U.S.C. § 1981; and claims under 42 U.S.C. § 1983 alleging violations of her Fourteenth Amendment right to equal protection and her First Amendment rights to freedom of speech and association.  In addition to the City, Ms. Salazar named four individual defendants:  Gerald M. Flannery, City Manager; Tom Acre, Deputy City Manager and Ms. Salazar's direct supervisor; Heather Olson, n/k/a Heather Spencer, Human Resources Director; and Paul Natale, Mayor.

The defendants moved for summary judgment, and the district court granted their motion as to most of Ms. Salazar's claims.  The court denied summary judgment on her claims against the City, Mr. Flannery, and Mr. Acre, alleging retaliatory termination in violation of Title VII and § 1981.  Those claims proceeded to trial, resulting in a jury verdict in favor of the defendants.  In its verdict, the jury concluded that Ms. Salazar's opposition to discrimination based on gender and/or race was not the determinative factor that caused the City, Mr. Flannery, or Mr. Acre to terminate her employment.  Ms. Salazar is not appealing the jury's verdict.

Rather, she presents the following claims of error in the district court's summary judgment order: (1) with respect to her discrimination claims, the court erred by (a) declining to consider her claim of a hostile work environment and (b) concluding that she failed to meet her burden to show that the proffered reasons for her termination were pretextual; (2) with respect to her First Amendment claim, the court erred in concluding that she spoke as a public employee rather than as a private citizen; and (3) with respect to her retaliatory termination claims against Mr. Natale and Ms. Spencer, the court erred in concluding that these defendants were entitled to the defense of qualified immunity because they were not decision makers with respect to her termination.

## II. Discussion

"We review the district court's order granting summary judgment de novo." *Daniels v. United Parcel Serv.*, 701 F.3d 620, 627 (10th Cir. 2012). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *Daniels*, 701 F.3d at 627.

## A.  Discrimination Claims

### 1.  Hostile Work Environment

Ms. Salazar initially contends that the district court erred in not permitting her to pursue a hostile-work-environment claim based on evidence of pervasive discrimination.  The district court declined to consider this claim because it was not included in the final pre-trial order.  Ms. Salazar acknowledges that the final pre-trial order did not mention the term "hostile work environment," but she argues that claim was sufficiently encompassed by her recitation of allegations detailing numerous incidents of alleged discrimination throughout her tenure with the City.

"[T]he pretrial order measures the dimensions of the lawsuit, both in the trial court and on appeal."  *Hullman v. Bd. of Trustees of Pratt Cmty. Coll.*, 950 F.2d 665, 668 (10th Cir. 1991) (internal quotation mark omitted).  And "[t]he district court has discretion to exclude from trial issues and claims not set forth in the pretrial order." *Rios v. Bigler*, 67 F.3d 1543, 1549 (10th Cir. 1995).

We find no abuse of discretion in the district court's determination that the final pretrial order did not set forth a hostile-work-environment claim.  The order contained no assertion that Ms. Salazar was relying on that distinct theory as one of her claims.  Rather, she listed her claims as alleging discrimination, retaliation, violation of equal protection, and abridgment of her First Amendment rights.  The recitation of these claims did not alert the defendants that Ms. Salazar would be asserting a hostile-work-environment claim—a wholly different theory of recovery

- 4 -

with different requirements of proof. *See id.* (rejecting claim that plaintiff's assertion of a "plain vanilla" negligence theory alerted the defendant that she was relying on a more specific theory of loss); *see also EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 797-98, 800 (10th Cir. 2007) (setting forth the different elements for claims asserting a hostile work environment and discriminatory disparate treatment). Nor does Ms. Salazar indicate that she sought to amend the final pretrial order to include a hostile-work-environment theory. *See Rios*, 67 F.3d at 1549. We cannot say that the district court abused its discretion in declining to consider a hostile-work-environment claim in its summary judgment ruling.

### 2. Gender Discrimination in Violation of Title VII

In the district court, the City did not contend that Ms. Salazar failed to make out a prima facie case of gender discrimination. Nor did she argue that the City's proffered reasons for terminating her are not supported by the record. The district court granted summary judgment in favor of the City after concluding that Ms. Salazar failed to show that the City's proffered reasons for her termination were pretextual. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973). She claims that the court's conclusion was in error.

The City's grounds for Ms. Salazar's termination were set forth in a letter signed by Mr. Acre. The letter asserted that Ms. Salazar was terminated because she had behaved unprofessionally; she demonstrated an inability to work as part of a team with other City employees; she failed to communicate effectively with the rest

of her own department; she did not demonstrate good judgment regarding sharing information with the City Manager; and she had submitted numerous lengthy, confrontational memos containing repetitive and meritless complaints, which she refused to substantiate, and then she refused to participate in the investigations of her complaints.

"Under our precedents, a plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude they are unworthy of belief." *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (internal quotation marks and brackets omitted). Evidence of pretext "may take a variety of forms," and "[a] plaintiff may not be forced to pursue any particular means of demonstrating [it]." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (brackets omitted). While Ms. Salazar cites to evidence in the record, in some instances she fails to explain *why* it shows that the proffered reasons for her termination were not "held in good faith." *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006). We address her contentions to the extent she develops her arguments regarding pretext.

One way to establish pretext is with evidence that the stated reasons for an adverse employment action were false. *See id.* Ms. Salazar contends that the City's proffered reasons, specifically regarding her unprofessionalism and her lack of cooperation with other staff members, were false. She points to her own written

responses to her performance evaluations in which she expressed disagreement with the conclusions reached. For example, she maintains that any communication problems she experienced resulted from employees in other City departments cutting her out of relevant meetings and projects, rather than from her own actions. Ms. Salazar also cites evidence of her achievements during her employment with the City and other employees' positive statements about her performance.

This evidence fails to show pretext because "it is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of her own relative performance." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1179 (10th Cir. 2006) (holding plaintiff's subjective beliefs regarding her attitude, knowledge, and performance did not raise a genuine issue of material fact regarding employer's stated bases for her termination) (internal quotation marks and brackets omitted). Moreover, none of the evidence Ms. Salazar relies on shows that the specific performance issues cited by the City were "false," that is, that the City's stated reasons for her termination were not held in good faith. *See Young*, 468 F.3d at 1250.

A plaintiff may also show pretext with evidence of disparate treatment of "similarly situated, non-protected employees who violated work rules of comparable seriousness." *Kendrick*, 220 F.3d at 1232. Ms. Salazar claims that during a meeting she attended in June 2007, a male employee, Christopher Cramer, behaved belligerently. She presented evidence that, while she was criticized for

communication problems in her subsequent performance evaluation, Mr. Cramer's

evaluation made no mention of the incident and otherwise praised his communication

skills. This evidence is insufficient to establish pretext because Ms. Salazar fails to

show that Mr. Cramer was a similarly situated employee. "An employee is similarly

situated to the plaintiff if the employee deals with the same supervisor and is subject

to the same standards governing performance evaluation and discipline." *Id.*

(internal quotation marks omitted). At the time of the incident she describes,

Ms. Salazar reported to Roger Tinklenberg, while Mr. Cramer reported to someone

else. *See* Aplt. App., Vol. II at 335-36. Ms. Salazar does not contend that

Mr. Cramer's supervisor played any role in her termination. *See Rivera v. City &*

*Cnty. of Denver*, 365 F.3d 912, 922 (10th Cir. 2004) ("Comparison of one

disciplinary action with another ordinarily is relevant only to show the bias of the

person who decided upon the disciplinary action.").

Ms. Salazar contends there is evidence showing that Mr. Flannery, who made

the decision to terminate her employment, was biased against women. She asserts

that Mr. Flannery demoted or terminated all female directors in 2007 or 2008. But

while she points to the termination of one female director, as well as claims by two

other female employees that their positions were downgraded from director to

manager, she provides no evidence that three other female directors, including

Ms. Spencer, were also terminated or demoted by Mr. Flannery. Nor does she cite

any precedent supporting her contention that the existence of discrimination charges

- 8 -

filed by other female employees is sufficient to establish that the proffered reasons for her termination were pretextual.

Ms. Salazar also argues that evidence of discriminatory comments about women by Mr. Natale, the City's mayor, establishes that the City's proffered reasons for her termination were pretextual. She cites evidence of the following remarks: (1) Mr. Natale's reference to the female staff of former City Manager Perry VanDeventer as his "harem," Aplt. App., Vol. II at 283; (2) his comment in October 2006, upon learning that the City was implementing a new competitive-hiring process, "Good, no more young and blonde," *id.* at 290-91; (3) his statement, made at some point before he was elected the Mayor in 2007, that he intended to "clean-out the third floor," *id.* at 389; and (4) his reference to senior female staff as "queens," *id.* at 289.

"Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994). To establish pretext from such comments, Ms. Salazar must tie the statements to her termination. *See Johnson*, 594 F.3d at 1212-13. That is, she must show that the comments were directed at her or her position, or that there is a connection between the comments and her termination. *See id.* Ms. Salazar fails to point to evidence showing the necessary nexus. First, she does not establish that Mr. Natale's use of the terms "harem" and "queens" were directed at her or her position. Mr. Natale testified that he used the

term "queens" to refer to specific female employees who he believed had been allowed by Mr. VanDeventer to run the City—a group that he said did *not* include Ms. Salazar. *See* Aplt. App., Vol. II at 289. Ms. Salazar does not point to any contrary evidence. Rather, and consistent with Mr. Natale's testimony, there is evidence that she had voiced complaints about being treated poorly by Mr. VanDeventer's inner circle because she was not one of his "cadre of loyalists," which was led by his "enforcer," Chief of Staff Pat Greer, another female City employee. *Id.* at 351. Nor does Ms. Salazar contend that the comment about "no more young and blonde" was directed at her or her position. Finally, Mr. Natale's remark about cleaning out the third floor is too ambiguous to establish pretext. *See Cone*, 14 F.3d at 531 (stating "ambiguous comments are too abstract to support a finding of . . . discrimination" (internal quotation marks and ellipsis omitted)). Although Ms. Salazar attempts to provide context for the statement, noting that senior female staff members had offices on the third floor, she does not show that *only* female employees worked on that floor.

Moreover, Ms. Salazar has not established a nexus between Mr. Natale's comments and her termination such that pretext can be inferred. The evidence indicates that Mr. Natale was not involved in the decision to terminate her employment. *See id.* (stating discriminatory comments by non-decision maker are not material in showing employer's action was based on discrimination). He testified that, although he had expected it to occur, he was not informed in advance that she

- 10 -

would be terminated. And the evidence established that the City's charter barred the mayor from being involved in personnel matters not concerning the City Manager or the City Attorney. Aside from the remarks that we have already addressed, Ms. Salazar cites no evidence that supports her contention that Mr. Natale "participated behind the scenes" and "exert[ed] his influence to obtain the results he had suggested." Aplt. Opening Br. at 28. Her assertions are thus based solely on speculation. *See Young*, 468 F.3d at 1252 (stating "there must be some evidence in the record suggesting that plaintiff's termination at issue was infected by such bias"); *cf. Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1270-71 (10th Cir. 2012) (rejecting claim, based on lack of evidence, that non-decision maker's biased act was proximate cause of the defendant school district's employment decision).

Ms. Salazar points to other evidence that she characterizes as showing discrimination based on her gender. She claims that she was told she would not be treated as a director, even though that was the position she was hired to fill. But according to her, it was Mr. VanDeventer *and* Ms. Greer who allegedly took away her director title, while several other women retained that title. Ms. Salazar also asserts that she and her department staff were excluded from meetings that were necessary for coordination between the City's different departments. She presented the testimony of a former City employee who agreed that Ms. Salazar had not been invited to meetings that other City directors attended. This witness also supported her claim that Mr. VanDeventer and other City administrators were not very

- 11 -

supportive of Ms. Salazar or her department.  But when asked if he thought that this lack of support was a result of her gender, the witness said, "I can't say that that's true."  Aplt. App., Vol. II at 318.  Also, Ms. Salazar's evidence shows that another female City employee was primarily responsible for excluding her from meetings with the Planning department.  And although Mr. Acre admitted failing to make his staff meetings a standing appointment on Ms. Salazar's calendar, the department heads he did invite to these meetings included one other female director.  Ms. Salazar's evidence fails to establish that these perceived slights against her by other employees were based on her gender.

Finally, Ms. Salazar claims that the district court impermissibly weighed her evidence of a pattern of sex discrimination, rather than drawing all inferences from the evidence in her favor.  "[S]tatistical data showing an employer's pattern of conduct toward a protected class can create an inference that an employer discriminated against individual members of the class."  *Cone*, 14 F.3d at 532 (internal quotation marks omitted).  But the statistics must "demonstrate discrimination."  *Id.*  Here, Ms. Salazar did not present any statistical evidence supporting an inference that the City discriminated against women.  We agree with the district court that her evidence, "even when viewed in the light most favorable to Plaintiff, does not amount to a 'pattern of sex discrimination' leading to Plaintiff's termination," such that pretext can be inferred.  Aplt. App., Vol. III at 572.

Ms. Salazar has not come close to casting doubt on any, much less many, of the reasons for her termination cited by the City. *See Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000) (holding employee must cast substantial doubt on many of employer's multiple reasons for adverse employment action). We therefore affirm the district court's grant of summary judgment in favor of the City on her gender discrimination claim under Title VII.

### 3. Gender Discrimination in Violation of § 1983

The district court also granted the individual defendants summary judgment on Ms. Salazar's equal protection claim under § 1983 in which she alleged disparate treatment based on her gender. The court reasoned that the elements of her gender discrimination claims were the same under Title VII and § 1983. Ms. Salazar does not assert any error in that ruling, and we therefore affirm the district court's grant of summary judgment on all of Ms. Salazar's gender discrimination claims.

### 4. National Origin Discrimination

Ms. Salazar does not challenge the district court's determination that she is not a member of a protected class for purposes of her claim of national origin discrimination.[1] But she contends there are genuine issues of disputed fact as to her advocacy on behalf of a Navajo City employee and a Hispanic City employee and whether Mr. Flannery discriminated against these employees. She contends her advocacy "constitutes protected activity to support her claim for national origin

---

[1]    "Salazar" is the plaintiff's married name rather than her maiden name.

- 13 -

discrimination." Aplt. Opening Br. at 24. The district court concluded that "she did not allege or assert any direct racial discrimination against her based on [her] relationships [with these minority employees]; rather, her claim is that she was retaliated against for complaining of such discrimination." Aplt. App., Vol. III at 574. The court therefore granted summary judgment in favor of defendants on Ms. Salazar's claims of national origin discrimination by association under Title VII and § 1981.

Ms. Salazar's four-sentence argument on this issue is perfunctory at best, and she fails to respond directly to the district court's conclusion that her evidence supported only a claim of retaliation for her complaints of discrimination against minority employees. We affirm the district court's grant of summary judgment on Ms. Salazar's claims alleging national origin discrimination.

**B. First Amendment Claim**

The district court granted summary judgment on Ms. Salazar's § 1983 claim alleging that defendants retaliated against her for exercising her First Amendment right to freedom of speech, specifically by speaking out regarding discrimination against herself and others. The court concluded that Ms. Salazar's statements were made in her role as a City employee, rather than as a citizen, and therefore were not protected by the First Amendment. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007) ("If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on

- 14 -

speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." (internal quotation marks omitted)). The court reasoned that the documents in which Ms. Salazar asserted her discrimination allegations were clearly related to her position as the City's Director of ED or regarded her own job performance, so were generally consistent with the type of activities Ms. Salazar was paid to do. The court also rejected her contention that the City's handbook only required her to report "harassment" rather than discrimination or retaliation. Finally, the court held there was no factual dispute regarding whether Ms. Salazar was expected to report discrimination based upon other supervisors' failure to report the incidents that she complained of.

Ms. Salazar first contends that the district court erred because her complaints regarding discrimination addressed matters of public concern. She asserts that the facts supporting her claim are analogous to those in *Patrick v. Miller*, 953 F.2d 1240, 1247 (10th Cir. 1992), where we held that "[t]he disclosure and attempted remediation of racially discriminatory employment practices is better characterized as a matter of social concern to the community." But Ms. Salazar's argument misses the mark because the district court did not find that her speech was not on a matter of public concern. Rather, it held that her speech was unprotected because it was made pursuant to her official duties. We did not address that question in *Patrick*, which was decided before the Supreme Court held in *Garcetti v. Ceballos*, that "when public employees make statements pursuant to their official duties, the employees are

not speaking as citizens for First Amendment purposes." 547 U.S. 410, 421 (2006); *see also Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1325, 1328 (10th Cir. 2007) (recognizing that in *Garcetti* the Supreme Court "profoundly alter[ed] how courts review First Amendment retaliation claims" and that the initial question in reviewing such a claim had been "significantly modified").

Ms. Salazar also claims that the district court erred in concluding that she was motivated to address her personal grievances when she reported gender based remarks and attempted to protect other employees from discrimination. This contention likewise appears to address whether her speech was on a matter of public concern. But to the extent she is attempting to challenge the district court's actual holding, we have held that the context in which speech is made is relevant to the question whether an employee spoke as a public employee or citizen. In *Hesse v. Town of Jackson*, 541 F.3d 1240, 1250 (10th Cir. 2008), we held that a town attorney's conversation with the town administrator regarding the attorney's treatment of employees arose in the context of the attorney's performance of his official duties. This was so because the purpose of the conversation was to address administrative issues and it was directed to the appropriate town official. *Id.*

Similarly, the district court examined the documents in which Ms. Salazar made her discrimination complaints and concluded that they were related to her position or to her own job performance. In the argument section of her opening brief, Ms. Salazar does not identify the specific statements she claims were protected

- 16 -

speech or the documents in which they were contained. The earliest discrimination complaint she identifies in her statement of facts was included in her 59-page memo to Mr. Flannery dated December 21, 2007, in which she provided comments in response to her recent performance evaluation as the Director of ED. She addressed in detail the portions of the evaluation with which she disagreed and indicated that her comments were to be incorporated into her evaluation. In this memo, Ms. Salazar ultimately sought a revised performance evaluation rating her "exceptional" in all categories, as well as a bonus and salary increase. She also cites her subsequent Report to Council on the Status of the Department of ED, dated January 7, 2008, in which she detailed her claims of discrimination and harassment by Mr. Flannery and Mr. Acre and commented further on her performance evaluation. Finally, Ms. Salazar points to a 31-page grievance she filed in response to a written reprimand from Mr. Flannery, asserting that the reprimand was issued in retaliation for her complaints regarding discrimination.

The district court did not err in holding that these communications were made pursuant to Ms. Salazar's official duties. Notably, Ms. Salazar does not contend that advising her superiors regarding issues related to her performance as the Director of ED was not within the scope of her job duties. *See Hesse*, 541 F.3d at 1250; *see also Brammer-Hoelter*, 492 F.3d at 1203 ("[I]f an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made

- 17 -

pursuant to the employee's official duties."). Moreover, the fact that she included claims of discrimination in these communications does not convert them into the protected speech of a citizen.

> Post *Garcetti*, this court has generally identified two factors that suggest an employee was speaking as a private citizen rather than pursuant to her job responsibilities: (1) the employee's job responsibilities did not relate to reporting wrongdoing and (2) the employee went outside the chain of command when reporting the wrongdoing.

*Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126, 1135-36 (10th Cir. 2010). Ms. Salazar does not contest on appeal the district court's finding that City policy required her, as a supervisor, to report discrimination. And she limited her reports to individuals within her chain of command. *Compare Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 748-49 (10th Cir. 2010) (holding plaintiff's complaints communicated only to fellow employees and supervisors through reports required by her employer's policies were within the scope of her official duties), *with Thomas v. City of Blanchard*, 548 F.3d 1317, 1325 (10th Cir. 2008) (holding speech is protected by First Amendment when public employee reports to someone outside of chain of command on matter not committed to her care). We affirm the district court's grant of summary judgment in favor of defendants on Ms. Salazar's First Amendment claim pursuant to § 1983.

### C. Qualified Immunity on § 1981 Retaliatory Termination Claims

The district court held that Mr. Natale and Ms. Spencer were entitled to qualified immunity on Ms. Salazar's retaliation claims under § 1981. "When a

defendant asserts a qualified immunity defense, the plaintiff must meet a strict two-part test. The plaintiff must establish (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct . . . ." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (citation and internal quotation marks omitted). Applying this test, the district court held that Ms. Salazar could not establish that Mr. Natale or Ms. Spencer acted to violate her constitutional rights because there was no basis to establish that either of them was a decision maker regarding her termination. *Cf. Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 852 & n.1 (10th Cir. 2000) (affirming summary judgment on § 1981 discrimination claim against an individual defendant where plaintiff failed to allege or establish the defendant was personally involved in the adverse employment action).

Ms. Salazar contends that the district court erred in granting Mr. Natale and Ms. Spencer qualified immunity on this claim. As we have previously noted, Ms. Salazar asserts that Mr. Natale participated behind the scenes and exerted his influence to bring about her termination. She points to the same evidence involving his gender-based statements that she relied on in attempting to show that the City's reasons for terminating her were a pretext for gender discrimination. She also argues that Ms. Spencer's involvement in drafting her termination letter and failure to investigate her discrimination complaints shows that Ms. Spencer was sufficiently involved in the termination to be liable under § 1981.

We have held that an individual who was not the decision maker with respect to an adverse employment action may nonetheless "be liable if he possessed a retaliatory motive which set in motion the events that ultimately led to [that action]." *Maestas v. Segura*, 416 F.3d 1182, 1191 (10th Cir. 2005) (considering First Amendment retaliation claim under § 1983). "[W]hether a plaintiff sufficiently alleges causation is a legal question." *McBeth*, 598 F.3d at 717. And a defendant may be entitled to qualified immunity based on a lack of causation between the defendant's conduct and the plaintiff's injury. *Id.*

In *Maestas*, the plaintiffs were employees of a city who sued two supervisors under § 1983, alleging retaliatory job transfers in violation of their First Amendment rights. 416 F.3d at 1184. The defendants were a department director, *id.* at 1185, and his subordinate division superintendent, *id.* at 1184. After the plaintiffs spoke out on waste and inefficiency within their division, the superintendent recommended to the director that the plaintiffs' positions be eliminated. The director accepted that recommendation and proposed it to the city council, but the city council declined to adopt it. *Id.* at 1186. The director then decided to transfer the plaintiffs to other jobs within his department. *Id.* at 1187.

We initially affirmed summary judgment in favor of the director because the plaintiffs failed to present sufficient evidence that his transfer decision was in retaliation for their speech. *Id.* at 1189-90. We next considered whether the plaintiffs could establish that the superintendent was liable for their transfers. We

noted that, "[w]hile the [director] made the final decision to transfer Plaintiffs, [the superintendent], though a subordinate, might be liable if he possessed a retaliatory motive which set in motion the events that ultimately led to Plaintiffs' transfers." *Id.* at 1191. We said the plaintiffs needed to show a causal link between their protected speech, the superintendent's recommendation to eliminate their positions, and the director's ultimate decision to transfer them. *Id.* at 1190-91. We illustrated the causation evidence necessary to hold a non-decision maker liable by citing cases in which the subordinate employee defendant either investigated the plaintiff's conduct or instigated charges against him, *and* recommended that the plaintiff be discharged or demoted. *See id.* at 1191. In *Maestas* we held that the plaintiffs failed to establish this causation. *Id.* at 1191-92.

Here there is no dispute that Mr. Flannery made the ultimate decision to terminate Ms. Salazar's employment. And a jury found that her opposition to discrimination was *not* the determinative factor that caused Mr. Flannery to terminate her. Ms. Salazar does not challenge that finding, and she fails to come forward with evidence that Mr. Natale or Ms. Spencer possessed a retaliatory motive that set in motion her termination by Mr. Flannery.

We have already concluded, in reviewing her gender discrimination claim against the City, that Ms. Salazar's contention regarding Mr. Natale's role in bringing about her termination is based on speculation. Moreover, the evidence she cites all relates to his alleged *gender* animus, whereas a retaliation claim under § 1981 must

be based on racial animus. *See O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1257-58 (10th Cir. 2001).

Nor has Ms. Salazar shown that Ms. Spencer was either a decision maker with respect to her termination or that she had a retaliatory motive that set in motion the events leading up to it. While Ms. Spencer did review the draft termination letter prepared by Mr. Acre, there is no evidence regarding what input, if any, she provided. Nor is there any evidence that Ms. Spencer recommended Ms. Salazar's termination to Mr. Flannery. *See Maestas*, 416 F.3d at 1191. Ms. Salazar nonetheless contends that Ms. Spencer's failure to investigate her complaints of racial or national origin discrimination shows that Ms. Spencer had a retaliatory motive to bring about her termination. But the evidence does not support this claim. Ms. Spencer investigated the discrimination claims in Ms. Salazar's December 21, 2007, memo that she felt were substantiated, but she did not construe the memo as alleging race or national origin discrimination. And Ms. Salazar declined the opportunity to clarify the nature of her claims by refusing to meet with Ms. Spencer in connection with her investigation. Ms. Spencer did not investigate Ms. Salazar's later claim of discrimination against a Navajo employee in her department or her grievance regarding Mr. Flannery's written reprimand because the City hired outside consultants to investigate those complaints. Ms. Salazar fails to show the necessary causal link between a retaliatory motive on the part of Ms. Spencer and Mr. Flannery's non-retaliatory decision to terminate her employment. *See id.* at

- 22 -

1190-91. We affirm the district court's grant of qualified immunity to Mr. Natale and Ms. Spencer on Ms. Salazar's retaliatory termination claims under § 1981.

### III. Conclusion

The judgment of the district court is AFFIRMED. The court's orders dated April 26, 2013, and May 14, 2013, provisionally directing that portions of the appendix would remain under seal, are hereby made permanent as to Volumes IV, VII, and VIII, which will continue to remain under seal.

Entered for the Court

Wade Brorby
Senior Circuit Judge